### In re PALMAS DEL MAR PROPERTIES, INC.

**Wage, Hour, and Erisa Complaints.**

**Master File No. 95–2373 (JAF).**

United States District Court,
D. Puerto Rico.

June 21, 1996.

Jose M. Acevedo–Alvarez, Juan A. Santana–Rodriguez, Humacao, Puerto Rico, for Plaintiffs.

Jose A.B. Nolla, Rafael J. Vazquez–Gonzalez, McConnell Valdes, San Juan, Puerto Rico, for Defendant.

## MEMORANDUM AND REMAND ORDER

FUSTE, District Judge.

Plaintiffs filed several Puerto Rico law claims against defendant in the Court of First Instance of the Commonwealth of Puerto Rico, District Court Section, Humacao Part. Defendant removed this civil action to federal court, claiming that plaintiffs' causes of action are preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1988) (ERISA). For the reasons discussed below, we **REMAND** plaintiffs' claims to the Courts of the Commonwealth of Puerto Rico.

### I.

### Introduction

Plaintiffs challenge the removal by defendant of their case filed in the Commonwealth court, arguing that their claims are not preempted by ERISA. In their Second Amended Master Complaint, *Docket Docu-*

ment No. 28, plaintiffs clearly allege that they were terminated from their employment with Palmas del Mar Properties when they refused employment with Universal Security, the entity with which defendant contracted for the provision of security guard services, and that such termination constitutes an unjust dismissal under the Puerto Rico Discharge Indemnity Law, 29 L.P.R.A. §§ 185a–185d (1995). Because they were allegedly unjustly discharged, they request as indemnity one month salary, and an additional progressive indemnity equivalent to one week for each year of service. 29 L.P.R.A. § 185a (1995). Plaintiffs also request payment for working overtime and during their lunch hour, plus an equal sum as liquidation of damages. 29 L.P.R.A. §§ 282–283 (1995). Lastly, plaintiffs claim that pursuant to Mandatory Decree No. 74, of the Minimum Wage Board of Puerto Rico, as amended (1991), defendant is required to pay plaintiffs sick-leave days accrued and unused.

Defendant's petition for removal asserts that we have original jurisdiction over plaintiffs' claims under ERISA. Although defendant admits that plaintiffs have stricken from their complaint their alleged loss of participation in an employee benefit plan, *see Docket Document No. 31*, defendant argues that plaintiffs dropped their employee benefit plan claim to deliberately deprive this court from exercising jurisdiction.[1] In order to defeat plaintiffs' strategy, defendant urges this court to declare that the Puerto Rico Discharge Indemnity Law and Mandatory Decree No. 74 constitute mandated welfare benefit plans jurisdictionally preempted by ERISA under the standard set forth by the First Circuit Court of Appeals in *Rosario–Cordero v. Crowley Towing*, 46 F.3d 120 (1st Cir.1995), and *Simas v. Quaker Fabric*, 6 F.3d 849 (1st Cir.1993).

### II.

### Analysis

A plain reading of plaintiffs' complaint reveals that plaintiffs' causes of action do not

---

1. The mention of an employee benefit plan in the original state-court complaint was, at best, a tenuous statement obviously made to cover such possibility in the event that relief under an employee benefit plan would be available. During the meetings and discussions had in chambers with counsel to produce a case management order over the many consolidated complaints, it became evident that there was no viable employee benefit plan cause of action.

raise issues of federal law. Each of plaintiffs' claims involve either the application or interpretation of Puerto Rico law. However, in *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the United States Supreme Court held that state law actions displaced by the civil enforcement provisions of ERISA can be characterized as claims arising under federal law; consequently, such actions can properly be removed to federal court, even though ERISA preemption does not appear on the face of the complaint.[2]

■■■ The preemption provisions of ERISA are indeed expansive. *Rosario–Cordero,* 46 F.3d at 122. ERISA provisions supersede any and all state laws insofar as they may relate to any employee benefit plan. 29 U.S.C. § 1144(a) (1988). An employee benefit plan is either an employee welfare benefit plan or an employee pension benefit plan, or both. 29 U.S.C. § 1002(3) (1988). The term "employee welfare benefit plan" is defined in Section 1002(1) of ERISA to include

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (1991). A state law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 128–29, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992). Even if the state law only indirectly affects a benefit plan, the law can still be preempted by ERISA. *Id. See also Rosario–Cordero,* 46 F.3d at 123.

## A. *Puerto Rico Discharge Indemnity Law*

■■■ Plaintiffs' unjust dismissal claim does not in any manner implicate the federal regulation of employee benefit plans. This is not an action to recover benefits under a plan. Rather, plaintiffs assert that as a matter of Puerto Rico law, they are entitled to indemnification for an unlawful discharge. This cause of action does not warrant a finding that the Commonwealth law "relates to" a covered plan for the purposes of preemption. Thus, this claim is not even marginally connected to the purpose behind ERISA: To federally regulate the establishment of employee benefit plans. *See Rosario–Cordero,* 46 F.3d at 123.

Defendant argues that *Simas v. Quaker Fabric,* 6 F.3d 849 (1st Cir.1993), controls the instant case. We find the case distinguishable. In *Simas,* the First Circuit Court of Appeals explained that to deem a regime a "plan" within the meaning of ERISA, it had to consider the extent and complexity of administrative obligations of the regime in question. *Id.* at 852–54. In that case, the Court found that Massachusetts' "tin parachute statute," which provided severance pay for employees who lost their jobs following corporate takeovers, was preempted by ERISA because

> [t]he Massachusetts employer needed some ongoing administrative mechanism for determining, as to each employee discharged within two years after the takeover, whether the employee was discharged within the several time frames fixed by the tin parachute statute and whether the employee was discharged for cause or is otherwise ineligible for unemployment compensation under Massachusetts law ... for at least two years after the takeover, and probably beyond that point as to disputed terminations, the employer would have to maintain records, apply the "for cause" criteria, and make payments or dispute the obligation.

2. On account of this principle, the court originally accepted removal jurisdiction.

6 F.3d at 853. The Massachusetts statute differs from Puerto Rico's Discharge Indemnity Law. The Puerto Rico statute requires the employer to indemnify an employee discharged without just cause. 29 L.P.R.A. § 185a (1995). The indemnity payment is standard in all cases—a sum equivalent to a month's pay plus one week's salary for every year of employment. 29 L.P.R.A. § 185(a). The payment is nothing else but a punishment, a fixed remedy due to any employee unfairly fired. To calculate this sum, the employer is not required to maintain any record beyond what is usually kept in an employee personnel file, including, for example, documentation regarding the employee's employment commencement and termination date, and salary increases. Once an employer has indemnified an unjustly fired employee, the employer has no more ongoing administrative responsibilities or schemes to follow.

Puerto Rico law does not require employers to keep specific documents or records to meet this kind of claims; however, diligent employers keep certain documentation to be able to establish the length of employment and the cause of dismissal. This does not require an ongoing administrative program as described in *Simas.* 6 F.3d at 852–54. What the Puerto Rico statute does is create a remedy in the nature of a tort action for wrongful discharge and, as such, the employer has to proceed to defend its reasons for dismissal as it would do in any civil claim. *See Vélez Rodríguez v. Pueblo International,* —— D.P.R. ——, 94 J.T.S. 37, at 11687–89 (1994) (discussing the concepts of unjust dismissal, employment at will, and the development of the Puerto Rico Discharge Indemnity Law since 1930 to the present). *See also* the following examples of typical cases under Puerto Rico law: *Narvaez v. Chase Manhattan Bank,* 120 D.P.R. 731 (1988); *De Arteaga v. Pall Ultrafine Filtration Corp.,* 673 F.Supp. 650 (D.P.R.1987), *aff'd,* 862 F.2d 940 (1st Cir.1988); *Menzel v. Western Auto Supply Co.,* 662 F.Supp. 731 (D.P.R.1987), *aff'd,*

848 F.2d 327 (1st Cir.1988). These cases confirm the tort-like analysis applied to Puerto Rico Discharge Indemnity Law claims.

The case before us is similar to *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax,* a Maine statute required employers, in the event of a plant closing, to provide a one-time severance payment to employees not covered by an express contract providing for severance pay. The Supreme Court held that the Maine severance pay statute was not preempted by ERISA, since it did not relate to any employee benefit plan. The Maine statute neither established nor required an employer to maintain an employee benefit plan that would be vulnerable to divergent multistate regulatory schemes. Similarly, the Puerto Rico Discharge Indemnity Law does not conflict with the regulatory goals of ERISA, which was enacted to allow employers that operate in different jurisdictions to create uniform employee benefit plans pursuant to ERISA's set of rules instead of having to comply with divergent state obligations. *Simas,* 6 F.3d at 852. Commonwealth law does not establish a benefit plan that frustrates or supplants ERISA's unified administrative benefit payment scheme. *See also Garcia v. Williamson Dickie Manufacturing Co.,* 924 F.Supp. 1 (D.P.R.1996) (Puerto Rico's Discharge and Indemnity Law is not an employee benefit plan under ERISA).[3]

### B. *Overtime and Sick Leave Wages Claim*

■ Overtime and sick leave pay are practices that generally do not constitute employee benefit plans. *See* 29 C.F.R. § 2510.3–1 (1995). The Secretary of Labor has excluded from the classification of employee welfare benefit plans certain payroll practices, such as overtime pay, or payment of compensation on account of periods of time during which the employee, although physically and men-

---

**3.** Although we agree with the holding in the cited case, we understand that the district court's characterization of the law as one providing a severance payment is not exact. The concept is not severance payment, but discharge indemnity. This judge is aware that both terms are used indistinctly by judges and lawyers alike in refer-

ence to the same body of law. The original Spanish version of the law refers to it as "indemnización por despido sin justa causa." The English version refers to the award as indemnity for discharge without just cause. 29 L.P.R.A. § 185(a). In any event, see Section 13 of the Civil Code, 31 L.P.R.A. § 13.

tally able to perform his or her duties and not absent for medical reasons, performs no duties. *Id.* The overtime and sick leave wages at issue here fall within the payroll practices provisions because they are payable based on the employees' normal rate of compensation, out of the employer's general assets, and without additional conditions or contingencies of any kind. *Id. See* Department of Labor ERISA Opinion Letter 81–36A (a bonus incentive plan established by employer for its employees who do not take all of their authorized sick leave is not an employee welfare benefit plan), and Opinion Letter 79–48A (payment for unused sick leave not an employee welfare benefit plan because payments made as an incentive and an inducement to employees not to make use of sick leave granted to them). The employer is not subjected to ERISA's extensive reporting and compliance requirements when it merely provides customary benefits for overtime and sick leave. *See also Shea v. Wells Fargo Armored Service Corp.,* 810 F.2d 372 (2d Cir.1987) (sick leave and vacation wages fall within the payroll practice exception to ERISA preemption).

Defendant asks that we apply to this case the reasoning of *Rosario–Cordero v. Crowley Towing, supra,* and hold that Mandatory Decree No. 74 is a welfare benefit plan under ERISA. We find *Rosario–Cordero* factually distinct from the case before us. In *Rosario–Cordero,* this court and the Court of Appeals held that claims under Mandatory Decree No. 38 of the Minimum Wage Board of Puerto Rico were preempted by ERISA because the decree affected the ERISA-covered multiemployer benefit plan which provided vacation benefits to employees. The courts found that the requirements of the decree differed from or conflicted with terms of the employer plan. *Id.,* at 124–26. In the present case, Mandatory Decree No. 74 does not conflict, affect, or interfere with any employer-created vacation benefit plan. Pursuant to Mandatory Decree No. 74, an employer has to pay its employees for accrued and unused sick leave when the employee takes his regular vacation. This decree does not require the employer to maintain an elaborate administrative plan to carry out its mandate. Under Mandatory Decree No. 74, the employer keeps track, as usual, of employee attendance, including hours worked, sick leave, and vacation periods. When the employee takes his vacation, the employer then pays his employee for any unused sick leave. Mandatory Decree No. 74 is not, even under a liberal reading of ERISA, an employer-established employee welfare benefit plan, or regulation affecting any employee benefit plan.

## III.

### *Conclusion*

For the foregoing reasons, we find that ERISA does not preempt plaintiffs' claims as pled. We REMAND plaintiffs' claims to the Commonwealth of Puerto Rico Court of First Instance, District Court Section, Humacao Part. The detail of the remanded cases is as follows:

| U.S. District Court Number | Plaintiff's Name | Humacao District Court Number |
| --- | --- | --- |
| 95–2373 | José A. Santiago Pérez | CD95–1280 |
| 95–2374 | Xavier Morales Vega | CD95–1279 |
| 95–2375 | Rubén D. Velázquez Cotto | CD95–1278 |
| 95–2376 | Rafael Claudio Cruz | CD95–1277 |
| 95–2377 | José A. Rodríguez Lebrón | CD95–1267 |
| 95–2378 | Ada Rodríguez Valentín | CD95–1266 |
| 95–2379 | Pedro C. Williams Figueroa | CD95–1265 |
| 95–2380 | Javier Carrasquillo Rodríguez | CD95–1264 |
| 95–2381 | Felipe Beltrán López | CD95–1263 |
| 95–2382 | Wigberto Burgos Amaro | CD95–1262 |
| 95–2383 | Eleuterio Burgos Mendoza | CD95–1261 |
| 95–2384 | Héctor Burgos Sánchez | CD95–1260 |
| 96–1198 | Héctor L. Benítez Rodríguez | CD96–77 |
| 96–1199 | Ada I. Gómez Arriaga | CD96–78 |

IT IS SO ORDERED.