**JACQUELINE BELL, Plaintiff,**

**v.**

**CHASE MANHATTAN BANK and RICHARD BROWN,**
**Individually and as the agent for CHASE MANHATTAN**
**BANK, Defendants.**

Civ. No. 97-129

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 11, 1999

Susan Bruch-Moorehead, St. Thomas, U.S.V.I., *for plaintiff*

Charles E. Engeman, St. Thomas, U.S.V.I. *for defendants*

MOORE, *Chief Judge*

### MEMORANDUM

Pending before the Court is defendants' Rule 12(b)(6) motion to dismiss counts V, IX, and X for failure to state claims upon which

relief can be granted. A previous, unpublished Memorandum and Order disposed of the motion to dismiss Counts II through IV and VI through VIII.

## I. INTRODUCTION

According to the complaint, Chase Manhattan Bank ["Chase"] employed Jacqueline Bell ["Bell"] from mid-1991 to mid-1996. In August of 1996, she was terminated from her position as a Senior Customer Representative. Immediately before her termination, "deliberate wrongful acts" were committed by another employee at Chase. (Am. V. Compl. at 2.) Bell cooperated in the bank's investigation of the incident, which the complaint alleges was "intense, intimidating and lengthy." (Id. at 3.) Bell asserts that defendant Richard Brown ["Brown"], a managing agent of Chase, fired her for "failure to follow bank procedures which resulted in a significant monetary loss to the bank," whereas he only warned the other employee "who was actively engaged in wrong doing." (*Id.*) Male co-workers who similarly failed to follow procedures were not terminated, according to Bell's ten-count complaint.

## II. STANDARDS ON MOTION TO DISMISS

■  Since a motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint, the Court's inquiry is limited to the contents of the complaint. *See Pepper-Reed Co. v. McBro Planning & Dev. Co.*, 19 V.I. 534, 564 F. Supp. 569 (D.V.I. 1983). Under Rule 8(a), "Claims for Relief," a claim need only be "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8. The Court cannot dismiss an action under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of the claims as pled which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The Court must assume the factual allegations raised in the complaint to be true. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969). The complaint should be construed liberally in the plaintiff's favor, giving that party the benefit of all fair inferences which may be drawn from the allegations. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). "The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).

## III. COUNT V: WRONGFUL DISCHARGE CLAIM

Defendant Chase moves to dismiss Count V, Bell's wrongful discharge claim, contending that the Virgin Islands Wrongful Discharge Act, V.I. CODE ANN. tit. 24, § 76 ["WDA"], is pre-empted by federal labor law.

### A. Enactment of Wrongful Discharge Act

With the enactment of the Virgin Islands Code in 1957, the Virgin Islands Legislature adopted the American Law Institute's restatements of the law as the substantive law of the Virgin Islands until and unless the Legislature enacts local laws to the contrary.[1] Thus, until modified by the Virgin Islands Legislature, the traditional rule that employment contracts could be terminated at the will of the employer or employee set forth in section 442 of the Restatement Second of Agency was the law of the Virgin Islands. Section 442 provides that "unless otherwise agreed, mutual promises by principal and agent to employ and to serve create obligations to employ and to serve which are terminable upon notice by either party; if neither party terminates the employment, it may terminate by lapse of time or by supervening events." RESTATEMENT (SECOND) OF AGENCY § 442 (1958).[2]

---

[1] *See* 1 V.I.C. § 4:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

[2] Despite the clear and still unmodified provisions of the Restatement of Agency directly on point, a 1982 decision of this Court adopted a new cause of action for wrongful discharge without acknowledging the existence of the applicable Restatement provision on point, namely section 442, or articulating how a court could legislate around it in light of 1 V.I.C. § 4. *See Robinson v. Hess Oil Virgin Islands Corp.*, 19 V.I. 106, 110 (D.V.I. 1982)(purporting to join "the increasing number of state courts which have modified the common law doctrine that an employer may unilaterally terminate an employment relationship for any reason when the employment is at will"); *see also Moore v. A.H. Riise Gift Shops*, 659 F. Supp. 1417, 1423 (D.V.I. 1987)(requiring in claim of wrongful discharge that discharge be 'contrary to a clear mandate of public policy"); *General Offshore Corp.*

In 1986, the Virgin Islands Legislature enacted the Wrongful Discharge Act, which strictly limited to nine the legal grounds for which a private employer may dismiss an employee.[3] The WDA declares that an employee of a private, non-governmental employer who is dismissed for any reason other than the nine enumerated grounds "shall be considered to have been wrongfully discharged." As originally enacted, the WDA preserved the freedom of the private employer and employee to negotiate and add to

*v. Farrelly,* 25 V.I. 226, 257, 743 F. Supp. 1177, 1197 (D.V.I. 1990). Since the issue was already covered by a Restatement provision, it would seem that this Court in Robinson was bound to follow section 442 under 1 V.I.C. § 4. Legislating a new cause of action for the tort of wrongful discharge was the task of the Virgin Islands Legislature, and not the Court. The later decisions were similarly flawed to the extent they concluded that a judge could supplant section 442 of the Restatement of Agency (Second) without action by the Virgin Islands Legislature. With the enactment of the WDA in 1986, the validity of *Robinson* and *Moore* has been rendered moot.

[3] The nine lawful grounds by which a private employer may dismiss any employee in the Virgin Islands remain the same today as originally enacted. An employer may discharge a private employee

(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

(b) The Commissioner may by rule or regulation adopt additional grounds for discharge of an employee not inconsistent with the provisions enumerated in subsection (a) of this section.

(c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

24 V.I.C. § 76(a).

380

or modify the nine statutory grounds for lawful dismissal by contract. Until amended in 1996, the nine statutory grounds for discharge were prefaced by the phrase, "unless modified by contract, an employer may dismiss an employee . . . . ." 24 V.I.C. § 76(a)(1986).[4] This private contract exclusion saved the WDA from direct violation of federal labor law. Whether this provision would have saved the WDA from federal preemption altogether is not at issue or addressed by this opinion.

The only legislative history available is a transcript of the December 15, 1986, floor debate on the bill. From that debate, it appears that the bill was intended to protect Virgin Islanders working in the tourism industry. The sponsor of the bill stated that "this is the ideal bill to protect employees and residents of the Virgin Islands so that when the snowbirds come down that our young people and family and friends who are working their [sic] don't be laid off because somebody didn't have on the right hairstyle, like in Barbados." (Comment of Sen. Adelbert Bryan, Transcript of Regular Session of the Sixteenth Legislature (Dec. 15, 1986) ["Tr."] at 9.)[5] Another legislative concern was to provide local employees legal recourse if discharged "on the whim of an employer." (*Id.* at 14 (comment of Sen. Virdin Brown).)

There is no hint in the sparse legislative history that the Virgin Islands Legislature modeled the WDA on any other particular jurisdiction's legislation, although the sponsor did state that "in Puerto Rico they have wrongful discharge laws, and in many other

---

[4] As recited in the preceding note, also excepted from the operation of the WDA are discharges due to cessation of business and general layoffs caused by economic conditions, as well as firings due to an employee's participation in concerted activity that is unprotected by Virgin Islands labor law.

[5] As a further example of the desire to protect workers in the tourism industry, Senator Bryan, in responding to the objections of another legislator, Senator Eric Dawson, expressed the view that the Legislature should prevent employers from banning their employees from returning to their places of employment to socialize with guests after work.

[W]hat he is trying to prevent is that after the bartender finish [sic] working that the bartender can't come back on his free time to continue the conversation and possibly get involved with the women or whoever they are to take them to the beach, to take them to another club, or take them even to the hotel room to go to bed with them.

Tr. at 9.

states in the United States they have wrongful discharge laws." (*Id.* at 10 (comment of Sen. Bryan).) Puerto Rico's "Discharge Indemnity Law," P.R. LAWS ANN. tit. 29, §§ 185a-185l (1995), however, only requires an employer to indemnify an employee discharged without cause in an amount calculated per the statute. "The indemnity payment is standard in all cases . . . . The payment is nothing else but a punishment, a fixed remedy due to any employee unfairly fired." *In re Palmas del mar Properties, Inc.*, 932 F. Supp. 36, 38 (D.P.R. 1996). The discharge provisions of the law apply only to the at-will employee, i.e., one "under a contract without a fixed time," (29 L.P.R.A. § 185a.),[6] are mandatory and cannot be waived by contract, (29 L.P.R.A. § 185i.), and provide the employee's exclusive remedy.[7]

---

[6]The first section of Puerto Rico's Discharge Indemnity Law provides:

> Every employee in commerce, industry or any other business or place of employment . . . in which he works for compensation of any kind, under a contract without a fixed time, who is discharged from his employment without good cause, shall be entitled to receive from his employer, in addition to the salary he may have earned:

> (a) The salary corresponding to one month, as indemnity;
> (b) An additional progressive indemnity equivalent to one week for each year of service.

29 L.P.R.A. § 185a. The definition of "good cause" includes some of the WDA's "grounds for discharge." *See id.* § 185b.

It is unclear whether the Discharge Indemnity Law is preempted under federal law. *See Santoni Roig v. Iberia Lineas Aereas*, 688 F. Supp. 810, 812-13, 817 (D.P.R. 1988)(employee claims under Discharge Indemnity Law are not "minor disputes" subject to arbitration under the Railway Labor Act's exclusive jurisdiction); *In re Palmas del mar Properties, Inc.*, 932 F. Supp. at 38 (Discharge Indemnity Law not preempted by ERISA because indemnity for discharge without just cause does not relate to federally regulated employee benefit plans). But *see de Jesus v. General Motors Acceptance Corp.*, 645 F. Supp. 146, 149 (D.P.R. 1986)(Discharge Indemnity Law preempted under ERISA).

[7] *See, e.g., Challenger Caribbean Corp. v. Union General*, 903 F.2d 857, 867 (1st Cir. 1990)(sole remedy of employee dismissed under collective bargaining agreement was indemnity by stipulation under CBA or by Discharge Indemnity Law, either of which precluded reinstatement or back pay); *see also Rodriguez v. Eastern Air Lines, Inc.*, 816 F.2d 24, 28 (1st Cir. 1987)("An employer who suspends an employee from work without cause 'is merely under the obligation of paying, in addition to the salary the employee would have earned, one month's salary [plus one week's salary for each year of service] as indemnity. . . . Not even the remedy of reinstatement is available in these cases.'")(quoting *Rivera v. Security Nat'l Life Insurance Co.*, 6 P.R. S. Ct. Official Translations 727, 738, 106 D.P.R. 517, 1977 WL 50774 (P.R. 1977)); *Valle v. J.C. Penney, Inc.*, 704 F. Supp. 329, 330 (D.P.R. 1988) (Discharge Indemnity Law is exclusive remedy for plaintiff privately employed for an indefinite period of time, whose only claim was for

No state or territory had a statute similar to the WDA in effect at the time of the WDA's adoption in 1986, nor has any adopted such a law since.[8] Indeed, the Court's research has revealed very few jurisdictions with any legislation regulating wrongful discharge of private employees beyond limiting the cause of action,[9] prohibit-

---

an unjustified dismissal); *Morales v. Digital Equipment Corp.,* 669 F. Supp. 1173, 1184 (D.P.R. 1987)(same), aff'd, 843 F.2d 613 (1st Cir. 1988). If an employee is fired in retaliation for cooperating with or testifying about "his/her employer's business before any administrative, judicial or legislative forum in Puerto Rico," however, he or she may seek the remedy of reinstatement and back pay. 29 L.P.R.A. § 185b.

[8] In 1991, the National Conference of Commissioners on Uniform State Laws adopted the Model Employment Termination Act (META)(adoption as a model act, rather than a uniform act, allows state by state amendment). See 7A U.L.A. 80 (Supp. 1991). META exchanges many common law claims in return for "easy access to arbitration for discharged nonunion employees." Punitive damages are not available, and 'good cause' rather than "just cause" is the applicable standard. *See* James Wallihan, *Too Little, Too Late: The Limits of Stand-Alone Arbitration in Discharge Cases,* 3/22/96 LAB. STUD. J. 39, 1996 WL 11998994 (1996). "The 'good cause' definition has been expanded to emphasize management's right to make legitimate business decisions and react to changing economic conditions. . . ." Prefatory Note to META (Westlaw, ULA, Model Employment Termination Act, without pagination). "An employer may contract with individual employees for a continuing 'at-will' status, as long as it provides them with fixed minimum amounts of severance pay." *Id.*
No state has enacted legislation based on META. *See, e.g.,* Wallihan, *Too Little.* In fact, as of 1998 "META has been introduced in about ten states, has been seriously considered in only one or two, and has not been enacted by any state." James J. Brudney, *Mediation and Some Lessons from the Uniform State Law Experience* 13 Ohio St. J. on Disp. Resol. 795, 820 (1998); *accord,* Randall Samborn, *Model Act Divides Employment Bar,* NATIONAL L.J., Oct. 14, 1991 at 1 (without considering other territories, notes that "only Montana and Puerto Rico have adopted wrongful discharge acts," citing interview with Prof. Theodore J. St. Antoine, META drafting committee reporter); Theodore J. St. Antoine, *The Making of the Model Employment Termination Act,* 69 WASH. L. REV. 361, 380 (1994). At least one commentator has said that certain key aspects of the META are based on Montana's Wrongful Discharge from Employment Act. See Donald C. Robinson, *The First Decade of Judicial Interpretation of the Montana Wrongful Discharge from Employment Act,* 57 MONT L. REV. 375, 376 (1996).

[9] For example, Montana's Wrongful Discharge from Employment Act ["MWDEA"], adopted in 1987, provides that 'except as limited in this part, employment having no specified term may be terminated at . . . will . . . on notice to the other for any reason considered sufficient by the terminating party" and except for suits alleging retaliatory discharge or discharge based on discrimination, the MWDEA is the "exclusive remedy" for discharge. MONT. CODE ANN. § 39-2-902, 912. Employees with a written contract for a specified term and those subject to a union collective bargaining agreement are exempted. *See id.* § 912. The act creates some procedural hurdles, including the requirement that internal procedures of appeal be followed if the employee is notified of their existence. *See id.* § 911. It limits the award of lost wages to a maximum of four years, with interest, less any income earned from other employment pending resolution of the claim. Punitive damages are available only if the employee shows "by clear and convincing evidence that the employer engaged in actual fraud or actual malice." Numerous related tort actions are abolished in that "there is no right under any legal theory to damages for wrongful discharge under this part for pain and suffering,

ing discrimination,[10] or codifying court decisions providing a public policy exception to the traditional at-will employment relationship.[11] No state has enacted any statute remotely similar to the WDA, nor one which so radically rends the long-accepted concepts of employee-employer relationship as does the Virgin Islands Wrongful Discharge Act.

In 1990, the WDA was challenged as facially violating due process, the Contracts Clause, and the Takings Clause.[12] *General Offshore Corp. v. Farrelly*, 25 V.I. 226, 743 F. Supp. 1177 (D.V.I. 1990).

---

emotional distress, compensatory damages, punitive damages, or any other form of damages" except as otherwise provided. Id. § 905.
Significantly, the MWDEA provides that, except as provided in the statute, "no claim for discharge may arise from tort or express or implied contract" (§ 913) and that

A discharge is wrongful only if:
(1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy [defined in § 903 as a policy concerning "the public health, safety, or welfare established by constitutional provision, statute, or administrative rule"];
(2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment ["Good Cause" is defined as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." MONT. CODE ANN. § 39-2-903.]; or
(3) the employer violated the express provisions of its own written personnel policy.

*Id.* § 904 (emphasis added).
Arkansas has also limited the cause of action. See "Penalties for Discrimination for Filing Claim" in the ARK. CODE ANN. § 11-9-107, which abolished the private cause of action for wrongful retaliatory discharge, replacing it with the possibility of fines payable to a state trust and determining it to be a felony. The act specifically stated that "[a] purpose of this section is to preserve the exclusive remedy doctrine and to specifically annul any case law inconsistent herewith, including" a series of cited cases. *Id.* The statute also declared that it "shall not be construed as establishing an exception to the 'employment at will' doctrine." *Id.; see, e.g., Tackett v. Crain Automotive,* 321 Ark. 36, 899 S.W.2d 839, 839 (Ark. 1995).

[10] *See, e.g.,* 45A AM. JUR. 2D Job Discrimination § 1-2. "Every state regulates employment . . . through laws prohibiting discriminatory practices." *Id.* at § 1.

[11] For example, many states have enacted "whistle-blower statutes" which protect employees from retaliatory discharge for disclosing violations of law. *See, e.g.,* 82 AM. JUR. 2D *Wrongful Discharge* 57 (discussing numerous state statutes).

[12] Section 3 of the Revised Organic Act of 1954 incorporates the concepts of Due Process, the Takings Clause, and the Contracts Clause. *See* REVISED ORGANIC ACT § 3, 48 U.S.C. § 1561. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1998) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT" or "Revised Organic Act"].

384

In response to the defendant's argument that the WDA does nothing more than define public policy, the Court noted:

> If the [WDA] did nothing more than set forth a list of reasons for discharge that would offend public policy, particularly if those reasons were drawn from the decisions of those jurisdictions that have adopted the public policy exception to the at-will employment doctrine, then it could fairly be said that the legislature had done no more than codify the common law.[13] The [WDA] goes beyond this. It inverts the system by creating a list of acceptable reasons for discharge, proscribing all others that are not justifiable by business necessity or other, similar reasons. Insofar as it defines public policy at all, it does so only negatively. By extending the common-law rule, the legislature has opened its actions to charges of contractual impairment.

*Id.* at 257-58, 743 F. Supp. at 1197.

In concluding that the WDA did not violate the Contracts Clause, or, for that matter, any of the other constitutional provisions there raised, *General Offshore* relied in part on the "unless modified by contract" saving provision in the WDA as originally enacted. The Court observed that "an employer and an employee are free to contract around the statute by creating additional reasons for discharge." *Id.* at 259 n.17, 743 F. Supp. at 1199 n.17. Although the issue of federal preemption had been raised in the *General Offshore* complaint, it was neither pursued by the parties nor addressed by the Court in its opinion. *See id.* at 267 n.21, 743 F. Supp. at 1204 n.21.

It should be emphasized that the original contract saving provision in reality only saved the right of non-union employers and employees to vary the WDA's nine lawful grounds for discharge. The original contract saving provision was completely

---

[13] Indeed, such public policy exceptions are codified in the Virgin Islands Code. *See, e.g.,* 4 V.I.C. § 483: Protection of Juror's Employment (prohibiting the discharge of employees serving on juries); and numerous sections of Title 10, Civil Rights, including 10 V.I.C. § 1: Statement of Public Policy (protecting employment against discrimination based on race, creed, color or national origin); *id.* § 64: Unlawful Discriminatory Practices (same); id. §§ 121-26: Whistleblowers Protection Act (prohibiting discharge for reporting violations of law).

superfluous to the extent it purported to preserve the right of a union to enter into a contract or collective bargaining agreement ["CBA"] with a private employer which modified the nine statutory grounds for discharge of the WDA. This is because federal labor law preempts the Virgin Islands Legislature from dictating what grounds for dismissal must be included in a CBA. *See, e.g., Allis-Chalmers v. Lueck, 471 U.S. 202, 220, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985) (holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . ., or dismissed as pre-empted by federal labor-contract law." Id.* at 220.).[14] Unfortunately, only this superfluous portion of the original, which excepted union contracts, survives the Legislature's 1996 amendment to section 76(a).

On February 21, 1996, the Legislature amended section 76(a) to provide that "[u]nless modified by union contract, an employer may dismiss any employee" only for the same nine reasons, plus, of course, business necessity or economic hardship. Thus, private non-union employment contracts may not provide any other grounds for dismissal than those contained in the WDA. The Legislature now allows only the already-preempted union contract or CBA to vary those statutory bases for discharge. The 1996 amendment thus eviscerated the ability of non-unionized employees and employers to modify by contract the WDA's nine legal grounds for discharge, thereby precluding free market economic forces from playing a role in the employment relationships of non-unionized employees and employers in the Virgin Islands.

The floor debate on the amendment consists of one statement by the sponsoring legislator, Senator David Jones.[15] It reads, in its entirety:

---

[14] *See Aristide v. United Dominion Constructors, Inc.,* 30 V.I. 224, 1994 WL 371406 (D.V.I. June 28, 1994) (dismissing wrongful discharge claims as preempted based on existence of CBA); *Joseph v. United Dominion Constructors, Inc.,* 30 V.I. 220, 1994 WL 371412 (D.V.I. June 20, 1994) (same); *Stafford v. Hess Oil V.I. Corp.,* 1998 V.I. LEXIS 10, 1998 WL 290237 (Terr. Ct. May 12, 1998) (same); *Charles v. Hyatt,* 27 V.I. 136 (Terr. Ct. 1992) (Hodge, P.J.) (reaching same result by applying the preemption doctrine of *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959)).

[15] The remaining discussion centered on the question of why Senator Jones did not offer section B of the amendment, not part of the transcript of the debate but apparently concerning plant closings and the private employees retirement system.

Mr. President, I do not need three minutes to explain this, because we have had a number of hearings on this particular issue. We have seen the practices in the private sector, where our workers have been exploited because of the unclear language in the present statute where there is room for the managers in the private sector to force our workers to sign these what are called, "the yellow dog contracts";[16] thereby, in many instances forcing employees to give up most of their rights where collective bargaining is concern [sic]. And this amendment simply attempt [sic] to. clarify the code and say exactly what we mean, that any modification must come, it must be in a union contract.

(Tr. of Regular Session of Twenty-First Legislature (Feb. 1, 1996) at 24 (emphasis added).) True to the sponsor's intent, the WDA, as amended, requires a private employee to join a union and mandates that the private employer negotiate with that union before they can contract to modify, add to, or subtract from the statutory grounds for lawful discharge.

## B. Direct Preemption Under National Labor Relations Act

Section 7 of the National Labor Relations Act, 29 U.S.C. §§ 151-66 ["NLRA"] guarantees to employees

the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an

---

[16] A "Yellow Dog Contract" is defined by Black's as

an employment practice by which employer requires employee to sign an agreement as condition of employment that he will not join a union, and will be discharged if he does join. Such contracts are prohibited by the National Labor Relations Act, the Norris LaGuardia Act, the Railway Labor Act, and as well by the laws of most states. 29 U.S.C.A. § 103.

BLACK'S LAW DICTIONARY 1616 (6th Ed. 1990).

agreement requiring membership in a labor organization as a condition of employment . . . .

29 U.S.C. § 157.

Generally, "Congress' power to pre-empt state [or territorial] law is derived from the Supremacy Clause of Art. VI of the Federal Constitution." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. at 208 (citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L. Ed. 23 (1824)). Although section 7 of the NLRA contains neither "explicit pre-emptive language nor otherwise indicates a congressional intent to usurp the entire field of labor-management relations," the Supreme Court has

> frequently applied traditional pre-emption principles to find state law barred on the basis of an actual conflict with § 7. If employee conduct is protected under § 7, then state law which interferes with the exercise of these federally protected rights creates an actual conflict and is pre-empted by direct operation of the Supremacy Clause.

*Brown v. Hotel & Restaurant Employees,* 468 U.S. 491, 502, 82 L. Ed. 2d 373, 104 S. Ct. 3179 (1984).

By forcing all private employees to join a union and all private employers to enter into union contracts in order to modify the nine statutory grounds for dismissal, the WDA violates section 7's guarantee that "employees have 'the right to refrain from any or all' concerted activities relating to collective bargaining or mutual aid and protection, as well as the right to join a union and participate in those concerted activities." *NLRB v. Granite State Joint Bd., Textile Workers Union, Local 1029,* 409 U.S. 213, 216, 34 L. Ed. 2d 422, 93 S. Ct. 385 (1972); *accord, e.g., Pattern Makers' League v. NLRB,* 473 U.S. 95, 104, 87 L. Ed. 2d 68, 105 S. Ct. 3064 (1985)(national labor union's constitution barring employees from resigning during a strike violates the congressional policy of voluntary unionism implicit in section 8(a)(3)).

The Virgin Islands Wrongful Discharge Act violates the national labor policy by interfering with the freedom of the private employer and private employee to negotiate an employment contract outside of the unionized collective bargaining process. In a nutshell, the WDA "'frustrate[s] the overriding policy of labor law

388

that employees be free to choose whether to engage in concerted activities.'" *Pattern Makers' League*, 473 U.S. at 100. Since only a union contract can modify its nine grounds for dismissal, the WDA prevents every private employer and employee in the Virgin Islands from modifying the statutory grounds for discharge unless a union is brought in to negotiate a collective bargaining agreement. For example, even if an employer and prospective employee both agree to an initial probationary period during which the employee could be discharged without cause, they must do so through a union contract for the provision to be effective and not violate Virgin Islands law. The WDA impermissibly intrudes upon the federally guaranteed freedom of employees and employers to enter into work relationships [*21] with or without engaging in the collective bargaining process.

■ While there are instances of federal preemption which require the balancing of certain federal and state interests, section 7 preemption does not.

> If the state law regulates conduct that is actually protected by federal law, however, pre-emption follows . . . as a matter of substantive right. Where, as here, the issue is one of an asserted substantive conflict with a federal enactment, then "the relative importance to the State [or Territory] of its own law is not material . . . for the Framers of our Constitution provided that the federal law must prevail."

*Brown*, 468 U.S. at 503 (quoting *Free v. Bland*, 369 U.S. 663, 666, 8 L. Ed. 2d 180, 82 S. Ct. 1089 (1962)). The Virgin Islands Wrongful Discharge Act is therefore preempted because it directly violates the federal labor policy of allowing employees to refrain from union activities by forcing a worker and an employer to enter into a union contract in order to modify the statutory grounds for dismissal.

## C. The Supreme Court's Machinists Preemption

Chase Manhattan Bank contends that the Virgin Islands Wrongful Discharge Act is preempted under *Lodge 76, Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 49 L. Ed. 2d

396, 96 S. Ct. 2548 (1976), which preempts state action that upsets the "balance of power" between management and labor in an area Congress intended to remain unregulated by state, territorial or federal law.[17] The Court will examine federal preemption under *Machinists* as an alternative to section 7 direct preemption.

In Machinists, union-member employees acted in concert to refuse to accept over-time assignments following the breakdown of negotiations and after the expiration of a previous collective bargaining agreement. The employer filed suit both with the National Labor Relations Board ["NLRB"] and the State of Wisconsin Employment Relations Commission ["WERC"] for alleged violations of federal and state labor statutes. The NLRB dismissed the charges on a finding that the employees' actions did not violate the NLRA and were outside its jurisdiction. The WERC, however, found the union's actions violated state law and issued a cease-and-desist order because it determined that the employees' actions were not protected or prohibited by the NLRA and Wisconsin was not preempted from regulating the conduct.

The Machinists took the WERC to state court, alleging preemption based on the primary jurisdiction of the NLRB reasoning articulated in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959). The Wisconsin Supreme Court held that the jurisdiction of WERC was not preempted, relying on *International Union, UAW, AF of L, Local 232 v. Wisconsin Employment Relations Comm'n [Briggs-Stratton]*, 336 U.S. 245, 69 S. Ct. 516, 93 L. Ed. 651 (1949). The Supreme Court of the United States, in turn, overruled *Briggs-Stratton* and reversed the Wisconsin Supreme Court, but not using the *Garmon* rationale that the state's authority to regulate the employees' conduct was preempted as necessary to protect the primary jurisdiction of the NLRB.

After re-explaining the *Garmon* reasoning, the Court in Machinists took note of "a second line of pre-emption analysis . . . developed in cases focusing upon the crucial inquiry whether

---

[17] The Court of Appeals for the Ninth Circuit held that a wrongful discharge claim under Montana's statute, (see note 9, supra), was preempted by the primary jurisdiction of the NLRB under *Garmon*, even though the discharge occurred following the expiration of a CBA, and thus did not discuss the district court's holding that plaintiff was preempted under *Machinists*. *See Bassette v. Stone Container Corp.*, 25 F.3d 757, 759-60 (9th Cir. 1994).

Congress intended that the conduct involved be unregulated because left 'to be controlled by the free play of economic forces.'" *Id.* 427 U.S. at 140 (quoting *NLRB v. Nash-Finch, Co.*, 404 U.S. 138, 144, 30 L. Ed. 2d 328, 92 S. Ct. 373 (1971)). The lack of congressional regulation of particular conduct which Congress had the power to control can itself be a form of preemption if the reason Congress refrained was to allow economic market forces to do the regulating. As subsequently elaborated,

> preemption is justified if the court finds that the absence of federal regulation is indicative of a congressional determination to leave the challenged conduct available, and that to allow the states to regulate the conduct would be to upset the balance of power between labor and management expressed in national labor policy.

*Peabody Galion v. Dollar*, 666 F.2d 1309, 1315 (10th Cir. 1981) (citing *Local 20, Teamsters v. Morton*, 377 U.S. 252, 260, 12 L. Ed. 2d 280, 84 S. Ct. 1253 (1964)). Thus, while Garmon and section 7 involve express preemption, Machinists concerns implied preemption.[18]

In enacting the WDA, the Virgin Islands Legislature attempted to fill a regulatory void which Congress plainly intended would continue to exist without state or territorial action.[19]

---

[18] The Supreme Court has since more fully stated the concept of express and implied preemption:

Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose."

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982) (emphasis added)(citations omitted).

[19] "The state action in this case is not filling "a regulatory void which Congress plainly assumed would not exist." *Machinists*, 427 U.S. at 149 (quoting *Hanna Mining Co. v. Marine Engineers*, 382 U.S. 181 at 196, 15 L. Ed. 2d 254, 86 S. Ct. 327 (Brennan, J., concurring).)

The benefits and obligations of the national labor policy apply to employees and employers alike.

> Although many of our past decisions concerning conduct left by Congress to the free play of economic forces address the question in the context of union and employee activities, self-help is of course also the prerogative of the employer because he, too, may properly employ economic weapons Congress meant to be unregulable.

> . . . .

> "(R)esort to economic weapons should more peaceful measures not avail" is the right of the employer as well as the employee, and the State may not prohibit the use of such weapons or "add to an employer's federal legal obligations in collective bargaining" any more than in the case of employees. Whether self-help economic activities are employed by employer or union, the crucial inquiry regarding pre-emption is the same: whether "the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's processes."

> . . . .

> Our decisions hold that Congress meant that these activities, whether of employer or employees, were not to be regulable by States any more than by the NLRB, for neither States nor the Board is "afforded flexibility in picking and choosing which economic devices of labor and management shall be branded as unlawful." . . . To sanction state regulation of such economic pressure deemed by the federal Act "desirabl(y) . . . left for the free play of contending economic forces, . . . is not merely (to fill) a gap (by) outlaw(ing) what federal law fails to outlaw; it is denying one party to an economic contest a weapon that Congress meant him to have available." Accordingly, such regulation by the State is impermissible because it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

*Machinists* at 147-48, 150-151 (footnotes and citations omitted).

392

The *Machinists*-preemption inquiry is completed by an analysis that is not necessary for section 7 preemption, namely, whether the WDA regulates matters which are so deeply rooted in local feeling and responsibility that Congress could not have intended that they be preempted by national labor policy or are merely of "peripheral concern" to that policy. *Machinists*, 427 U.S. at 135, 137. As has been noted, "the [Supreme] Court has not extended this exception beyond a limited number of state interests that are at the core of the States' duties and traditional concerns." *New York Tel. Co v. New York State Dep't of Labor*, 440 U.S. 519, 550-51, 59 L. Ed. 2d 553, 99 S. Ct. 1328 (1979)(Blackmun, J., concurring). This Court agrees with the Territorial Court that the WDA does not touch upon local responsibilities and interests that are rooted sufficiently deep to allow the inference that Congress intended to exclude the act from preemption. *See Charles v. Hyatt Corp.*, 27 V.I. at 140 (finding that a wrongful discharge claim under the WDA does not "relate to interests so deeply rooted in community feeling and responsibility to avoid pre-emption." (paraphrasing *Garmon*, 359 U.S. at 243).)

The discharge of private employees falls far short of the high level of local concern and responsibility recognized by the Supreme Court, such as, "malicious interference . . . by mass picketing and threats of violence," "threatening or provoking violence," "violence and intimidation," and "such traditionally local matters as public safety and order and the use of streets and highways." *Machinists* 427 at 136 n.2. Nor is it within the ambit of acceptable local legislation relating to "'child labor laws, minimum and other wage laws, laws affecting occupational health and safety'" or state laws relating to workers compensation, state holidays, or payment while serving on juries. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 754, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985) (finding no preemption of state law which required that employer-provided health insurance include mental-health benefits). Similarly, the discharge of employees regulated by the WDA is not of "peripheral concern" to Congress' labor policy, the usual example of "peripheral concern" being internal union matters. *E.g., Scofield v. NLRB*, 394 U.S. 423, 22 L. Ed. 2d 385, 89 S. Ct. 1154 (1969); *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 18 L. Ed. 2d 1123, 87 S. Ct. 2001 (1967).

■ Under this alternative doctrine of preemption, the Wrongful Discharge Act also violates the national labor policy by interfering with the freedom of the private employer and private employee to negotiate an employment contract outside of the unionized collective bargaining process. Since only union contracts can modify the WDA's grounds for dismissal, the WDA forces every private employer and employee in the Virgin Islands who wants to modify these grounds to bring in a union and negotiate a CBA. The WDA violates national labor policy by interfering with the free play of economic forces in the private labor market which Congress has intentionally left unregulated.

Accordingly, this Court finds that the Virgin Islands Wrongful Discharge Act is alternatively preempted under *Machinists* because its application "'would restrict the exercise of rights guaranteed by the Federal Acts.'" *Machinists*, 427 U.S. at 138 (quoting *International Union, UAW v. Russell*, 356 U.S. 634, 644, 2 L. Ed. 2d 1030, 78 S. Ct. 932 (1958)). In other words, section 76(a) is "impermissible because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Machinists*, 427 U.S. at 150 (quoting *Hill v. Fla. ex rel. Watson*, 325 U.S. 538, 542, 89 L. Ed. 1782, 65 S. Ct. 1373 (1945)).

## IV. COUNTS IX AND X

Counts IX and X are a loosely grouped amalgamation of various claims. Count IX alleges against both Chase and Brown breach of a duty to conduct a proper investigation, which resulted in injury and damages to plaintiff through both discharge and defamation. Court X alleges Chase breached a duty to train and oversee Brown, amounting to reckless disregard and negligence causing injury (Count X).

■ Defendants assert that both Counts IX and X should be dismissed because they were under no duty of the sort plaintiff alleges. There being no duty to Bell, there could be no breach. The Court agrees and the two counts will be dismissed. Counts IX and X, though couched in the language of tort, are nothing more than claims of breach of contract mingled with a claim of defamation, which is already alleged in Count VII. Further, the failure to properly investigate amounts to no more than the breach of

implied covenant of good faith and fair dealing claim alleged against Chase in Count III, and against Brown in Count IV.[20]

## V. CONCLUSION

For the foregoing reasons, Counts V, IX, and X will be dismissed. An appropriate Order is attached.

ENTERED this 11th day of February, 1999.

### ORDER

For the reasons set forth in the foregoing Memorandum, it is hereby

ORDERED that the motion to dismiss is granted in part and Counts V, IX, and X will be DISMISSED.

The counts of the Second Amended Verified Complaint which have survived the motion to dismiss are Counts I (Title VII), II and III (breach of contract and implied covenant of good faith and fair dealing), and VI (defamation).

ENTERED this 11th day of February, 1999.

---

[20] While there may be instances when torts arise out of contractual breaches, they are rare indeed. "A tort claim may be maintained only when the wrong ascribed to defendant … is the gist of the action, the contract being collateral." *Mann v. J.E. Baker Co.*, 733 F. Supp. 885, 888 (M.D. Pa. 1990)(applying Pennsylvania law)(citations omitted); *see also Jo-Ann's Launder Center, Inc. v. Chase Manhattan Bank*, 854 F. Supp. 387, 390-91 (D.V.I. 1994). Here, the alleged breach of contract is the essence of the plaintiff's cause of action, with the tort claims, if any, being collateral.

The Court does not reach defendants' other argument that Count IX should be dismissed because of the exclusivity of the Workers' Compensation Act.