**RONNIE RENNIE, Appellant/Plaintiff**
**v.**
**HESS OIL VIRGIN ISLANDS CORPORATION, Appellee/Defendant**

S. Ct. Civil No. 2014-0028

Supreme Court of the Virgin Islands

February 6, 2015

RHEA R. LAWRENCE, ESQ., LEE J. ROHN, ESQ., Lee J. Rohn and Associates LLC, St. Croix, USVI, *Attorneys for Appellant*.

LINDA J. BLAIR, ESQ., Bryant, Barnes, Blair & Benoit, LLP, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(February 6, 2015)

HODGE, *Chief Justice*. Appellant Ronnie Rennie appeals from the Superior Court's April 5, 2014 opinion and order, which granted a motion to dismiss filed by Appellee Hess Oil Virgin Islands Corporation ("HOVIC"). For the reasons that follow, we reverse and remand the case to the Superior Court for further proceedings.

## I. BACKGROUND

On November 21, 1997, Rennie filed a complaint against HOVIC in the Superior Court, asserting causes of action under the federal Civil Rights Act, several Virgin Islands statutes, and under Virgin Islands common law. In his complaint, Rennie stated that he worked for HOVIC since 1978, and in January 1994 served as a "Shift Foreman." Rennie alleged that while he — as a black Virgin Islander — was required to take tests to maintain his employment, employees hired from the United States mainland were not required to do so. Rennie also maintained that these employees had been paid higher wages, and were frequently promoted to the position of "Shift Supervisor" despite purportedly having less seniority and experience. Ultimately, Rennie alleges that, in March 1995, HOVIC demoted him to the lower position of "A Operator" for racially motivated reasons, and otherwise continued to discriminate against him.

HOVIC filed its answer on December 29, 1997, and on January 5, 1998, filed a notice of removal, thus transferring the case to the United States District Court of the Virgin Islands.[1] The District Court, in a September 17, 1998 order, entered summary judgment in HOVIC's favor on the federal Civil Rights Act claim, and then remanded all causes of action based on Virgin Islands law back to the Superior Court.[2]

On remand, the parties engaged in discovery, and — notwithstanding the fact that it had previously filed an answer — HOVIC filed a motion to dismiss on September 5, 2001. In that motion, HOVIC sought dismissal on several grounds, including that (1) the statute of limitations had lapsed on Rennie's statutory and common law claims; (2) Rennie failed to state a claim under the Virgin Islands Wrongful Discharge Act or the Virgin Islands Civil Rights Act; and (3) he lacked standing to bring a cause of action under 24 V.I.C. § 451 because that statute did not authorize a private right of action. Rennie filed an opposition to the motion to dismiss on October 26, 2001, and HOVIC filed a reply to that opposition on November 28, 2001.

For reasons not clear from the record, the matter was apparently neglected for the next 12 years, with the case languishing with no ruling on the motion to dismiss. Eventually, on September 16, 2013, the Superior Court *sua sponte* ordered the parties to submit supplemental briefs on the motion to dismiss. In its November 18, 2013 supplemental brief, HOVIC addressed new case law — such as the intervening decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) — but also raised a new issue, in claiming, for the first time, that Rennie's Virgin Islands Civil Rights

---

[1] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see Hansen v. O'Reilly*, 62 V.I. 494, 508 (V.I. 2015) (explaining that the federal removal statute applies to the Virgin Islands pursuant to 48 U.S.C. § 1613).

[2] *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 354-55, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that, rather than dismiss related local law claims upon dismissal of federal law claim that formed basis for removal, district court possesses jurisdiction to remand local claims back to the original forum); *see generally* 28 U.S.C. § 1367(c)(3) ("The district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Act cause of action was also time-barred. Rennie also filed a supplemental brief on the next day.

The Superior Court, in an April 5, 2014 opinion and order, dismissed Rennie's complaint with prejudice on the ground that all of his causes of action fell outside the statute of limitations, which it concluded was only two years. Given its conclusion that the statute of limitations had already lapsed for all causes of action, the Superior Court declined to consider, on the merits, any of the other issues that HOVIC raised in its motion to dismiss.

Rennie timely filed his notice of appeal with this Court on May 2, 2014. *See* V.I.S.CT.R. 5(a)(1). After the parties timely filed their briefs, this Court heard oral argument on November 12, 2014. As a result of questions raised during oral argument, this Court, in a November 17, 2014 order, directed the parties to submit supplemental briefs on the following additional issues:

1. For purposes of 24 V.I.C. § 76, is an employee "discharged" when he is demoted or reassigned to an inferior position?
2. Did 24 V.I.C. § 451 authorize a private cause of action at the time Rennie's cause of action accrued?
3. Did Rennie plead a valid cause of action under 10 V.I.C. § 7?

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). Since the Superior Court's April 5, 2014 opinion and order dismissed Rennie's complaint in its entirety, it constitutes an appealable final judgment. *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 422 (V.I. 2013).

The Court exercises plenary review over the Superior Court's grant of a motion to dismiss. *Pichierri v. Crowley*, 59 V.I. 973, 977 (V.I. 2013) (citing *Robles v. Hovensa*, 49 V.I. 491, 494 (V.I. 2008)). Likewise, this Court exercises plenary review over all issues of statutory construction. *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 619 (V.I. 2011) (citing *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)).

## B. Statute of Limitations

In his appellate brief, Rennie, in addition to challenging its decision on the merits, argues that the Superior Court erred by issuing any ruling on the statute of limitations at all. This Court, in its prior decisions in *Smith v. Turnbull*, 54 V.I. 369, 373-74 (V.I. 2010), and *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 187-90 (V.I. 2009), emphasized that a motion to dismiss filed after a party has already filed an answer is not properly before the Superior Court. HOVIC, while apparently conceding that the Superior Court committed error in this regard, contends that the error is harmless, in that this Court has held that a post-answer motion to dismiss for failure to state a claim may be considered as a motion for judgment on the pleadings, which would be subject to the same legal standard. *Benjamin v. AIG. Ins. Co. of P.R.*, 56 V.I. 558, 565 (V.I. 2012).

HOVIC is correct that, under normal circumstances, a motion to dismiss for failure to state a claim may be properly considered as a motion for judgment on the pleadings. However, HOVIC ignores that while some courts have, in the interests of judicial economy, permitted a defendant to raise a statute of limitations defense as part of a motion to dismiss for failure to state a claim,[3] it is well established that the statute of limitations is an affirmative defense that must be specifically pleaded at the first opportunity or else is waived. *See* SUPER. CT. R. 32(b) ("Answers shall comply with Rules 8 and 9 of the Federal Rules of Civil Procedure."); FED. R. CIV. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations . . . ."); *Yusuf v. Hamed*, 59 V.I. 841, 849 n.4 (V.I. 2013) ("A party asserting the statute of limitations must do so in a timely fashion, usually in [its] first response to the complaint."); *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (statute of limitations is typically an affirmative defense which defendant must plead and prove); *Eriline Co. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006) ("As

---

[3] *See, e.g.*, *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010) ("Although Federal Rule of Civil Procedure 8(c) suggests that a statute of limitations defense cannot be used in the context of a . . . motion to dismiss, our cases recognize that a defendant may raise a limitations defense in a motion to dismiss. For the defendant to prevail, though, the plaintiff's tardiness in bringing the action must be apparent from the face of the complaint." (internal quotation marks and citations omitted)) (collecting cases).

a defense waivable by the inaction of a party, the statute of limitations bears the hallmarks of our adversarial system of justice, a system in which the parties are obliged to present facts and legal arguments before a neutral and relatively passive decisionmaker."); *Harwell v. Million*, 77 Fed. Appx. 296, 298 (6th Cir. 2003) ("[T]he state did not assert the statute of limitations as an affirmative defense in the first responsive pleading . . . . Under these circumstances, the state waived the statute of limitations defense by failing to plead it at the first opportunity to do so."); *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) ("The statute of limitations is an affirmative defense . . . that must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded." (citations omitted)).

■ In this case, HOVIC's December 29, 1997 answer asserted a statute of limitations defense to Rennie's federal Civil Rights Act claim. However, the December 29, 1997 answer did not raise a statute of limitations defense with respect to any of Rennie's other causes of action.[4] By affirmatively raising a statute of limitations defense in its first responsive pleading as to only one cause of action, HOVIC has waived any statute of limitations defense as to all other causes of action. *Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1289 n.12 (9th Cir. 2001) ("[The defendant] did include a statute of limitations argument, but only with respect to [the plaintiff]'s seventh cause of action, a claim of negligence. [The defendant] consciously chose to limit its statute of limitations argument to one cause of action; the arguments with respect to the others are waived."). And, in any event, HOVIC clearly waived any statute of limitations defense as to Rennie's Civil Rights Act and tort claims, in that HOVIC did not move to dismiss his Civil Rights Act claim as untimely until it filed its November 18, 2013 supplemental brief, and, in fact, never moved to dismiss Rennie's tort claims as untimely.

Thus in the present procedural posture the rule this Court applied in *Benjamin* — treating an untimely motion to dismiss for failure to state a claim as a motion for judgment on the pleadings — cannot apply to this case, since HOVIC waived its statute of limitations defense approximately

---

[4] The only reference to the statute of limitations in HOVIC's answer is in a list of affirmative defenses, which includes the language "Affirmative Defense No. 7: Plaintiff's Title VII claim is time barred." (J.A. 178.)

three years and eight months before it filed its motion to dismiss by asserting a statute of limitations defense only as to the federal Civil Rights Act cause of action, and failing to assert the statute of limitations with respect to any of the causes of action arising under Virgin Islands law. To hold otherwise would, in effect, permit HOVIC to resurrect an affirmative defense that it has already waived. *Bryan v. Fawkes* (*Bryan I*), 61 V.I. 201, 222 & n.12 (V.I. 2014). Thus, the Superior Court committed error by adjudicating HOVIC's statute of limitations defense on the merits notwithstanding the fact that this defense had been waived, and by *sua sponte* dismissing Rennie's tort claims on statute of limitations grounds when HOVIC had never requested that relief.

 Nevertheless, even if not waived, we would reject HOVIC's statute of limitations defense because HOVIC is mistaken as to which statute governs Rennie's statutory claims.[5] *In re Plaskett*, 56 V.I. 441, 447 (V.I. 2012) (addressing a waived issue "on the merits in order to provide . . . guidance going forward"); *see also United States v. Morris*, No. 4:10-cr-0090-SWW-1, 2014 U.S. Dist. LEXIS 77279, *15 (E.D. Ark. June 6, 2014) (unpublished) (addressing statute of limitations defense on the merits despite finding waiver); *Jaworski v. Estates of Horwath*, 277 P.3d 753, 755 (Alaska 2012) (Stowers, J., concurring in part) (holding that a court should consider a waived statute of limitations defense on appeal when "the bar and bench would profit from an opinion on the merits"). In its decision, the Superior Court relied upon *Canonier v. Mahogany Run Condo. Ass'n*, 54 V.I. 210, 219 (V.I. Super. Ct. 2011), and *Krimmel v. Hovensa, L.L.C.*, Civ. No. 2002-0028, 2007 U.S. Dist. LEXIS 98200, *13 (D.V.I. Nov. 28, 2007) (unpublished), which held that claims under the Virgin Islands Wrongful Discharge Act and the Virgin Islands Civil Rights Act are subject to a two-year statute of limitations under 5 V.I.C.

---

[5] Because HOVIC did not raise a statute of limitations defense to Rennie's tort claims in any of its filings, and those claims were instead dismissed by the Superior Court *sua sponte*, we decline to address them at all. Nevertheless, we note that numerous courts have held that plaintiffs need not anticipate the statute of limitations or other affirmative defenses when they draft their complaints, and thus question the Superior Court's decision to dismiss any of Rennie's claims as time-barred without, at a minimum, providing him with an opportunity to amend his complaint. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980); *Indep. Trust Corp. v. Stewart Information Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

§ 31(5)(A).[6] Rennie, however, contends that the Superior Court should have applied the limitations period codified in 5 V.I.C. § 31(3)(B), which establishes a six-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

We agree with Rennie. Neither of the decisions relied upon by the Superior Court were in any way binding on the Superior Court. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 755-56 (V.I. 2014); *In re Q.G.*, 60 V.I. 654, 661 n.8 (V.I. 2014). More importantly, those decisions contained no analysis of the statute of limitations question at all, but simply cited section 31(5)(A) without even acknowledging the existence of section 31(3)(B). As such, their value even as persuasive authority is questionable. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 983 (V.I. 2011) (declining to follow a District Court case that was "only slightly more than two pages long" and "cite[d] to no case law" notwithstanding the fact that other Virgin Islands courts had relied upon that decision in subsequent cases).

Treating claims under the Virgin Islands Wrongful Discharge Act and the Virgin Islands Civil Rights Act as tort claims for statute of limitations purposes also conflicts with an early decision of this Court, which observed, albeit in dicta, that the Wrongful Discharge Act "create[s] . . . liability." *Magens Point Resort Hotel v. Benjamin*, 58 V.I. 191, 196 (V.I. 2009) (unpublished);[7] *see also Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 178, 41 V.I. 502 (3d Cir. 1999) (stating that the Virgin Islands Civil Rights Act "creates liability"). The dicta of our *Magens Point* decision is supported by a decision of the Supreme Court

---

[6] Pursuant to this statute, a two-year limitations period applies to "[a]n action for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not herein especially enumerated, or to set aside a sale of real property for non-payment of real property taxes pursuant to Title 33, chapter 89, subchapter III of this Code." 5 V.I.C. § 31(5)(A).

[7] Although this Court designated its *Magens Point Resort Hotel* decision as "Not For Publication" in 2009, several years later the publisher of the Virgin Islands Reports — for reasons that remain a mystery to this Court — published the opinion in its 58th volume. While it is common for reporters to make technical edits to opinions issued by a court, *see Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 685 (2d Cir. 1998), we are not aware of any situation where a reporter has disregarded a court's instruction not to publish an opinion. In any event, all decisions of this Court, whether published or unpublished, may be cited as authority. *See Bryan v. Fawkes* (*Bryan II*), 61 V.I. 416, 451 & n.16 (V.I. 2014) (citing V.I.S.CT.I.O.P. 5.3; V.I.S.CT.I.O.P. 5.7.1(a)).

of Kansas interpreting a statute that is word-for-word identical to section 31:[8]

> A liability is 'created by a statute' for purposes of [this statute of limitation provision] where liability for resultant damages would not arise but for the statute. A statute that merely provides a procedure for obtaining relief does not trigger [the statute of limitations]; it must provide a new substantive right that does not otherwise exist at common law.

*Wright v. Kansas Water Office*, 255 Kan. 990, 881 P.2d 567, 572 (1994) (internal citations omitted). The Kansas Supreme Court, applying this standard, concluded that a claim for wrongful termination under a Kansas civil service statute constituted an action for a liability created by statute, and thus was subject to a longer statute of limitations. *Id.* at 573; *see also Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) ("[b]ecause wrongful discharge under [the state code] is a creature of statute, [the appellant's] claim is subject to the six-year statute of limitations" under statute of limitations provisions similar to those in the Virgin Islands Code because the two-year period "is limited to common law causes of action not created by statute"); *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795 (Ky. 2003) (five-year statute of limitations for rights created by statute "governed a claim for wrongful discharge against an employer"). Given that the Virgin Islands Wrongful Discharge Act and the Virgin Islands Civil Rights Act establish liabilities *independent of the common law*,[9] *they are clearly governed by the* six-year limitations period imposed by section 31(3)(B), and not of the two-year period prescribed by section 31(5)(A).

---

[8] As this Court has previously observed, many of the provisions found in subtitle 1 of title 5 of the Virgin Islands Code — dealing with civil procedure — were adopted verbatim from Kansas statutory law. *Brown v. People*, 54 V.I. 496, 514 n.11 (V.I. 2010); *Mulley v. People*, 51 V.I. 404, 418-19 (V.I. 2009). Thus, decisions of the Kansas Supreme Court interpreting such statutes are highly persuasive. *Chinnery v. People*, 55 V.I. 508, 533-34 (V.I. 2011).

[9] At oral argument, HOVIC insisted that the Virgin Islands Wrongful Discharge Act simply codified an existing common law right. This, however, is manifestly incorrect. *See Webster v. CBI Acquisitions, LLC*, Super. Ct. Civ. No. 558/2011 (STT), 2012 V.I. LEXIS 9, at *4-6 (V.I. Super. Ct. Mar. 5, 2012) (unpublished) (summarizing the history of wrongful discharge in the Virgin Islands, and noting that there was no common law claim for wrongful discharge prior to codification of the Virgin Islands Wrongful Discharge Act). In fact, as we explain in more detail below, the Wrongful Discharge Act — which has not been borrowed from, or adopted by, any jurisdiction outside of the Virgin Islands — abolishes the common law employment-at-will doctrine.

## C. Additional Issues in HOVIC's Motion to Dismiss

As explained above, the Superior Court committed error by considering HOVIC's statute of limitations defense on the merits notwithstanding the fact that it had been waived. Nevertheless, HOVIC maintains that even if the Superior Court erred in dismissing Rennie's complaint as time-barred, this Court should nevertheless affirm the dismissal of the statutory causes of action on the alternate grounds that it raised in its motion to dismiss, even though the Superior Court did not address them in the first instance.

 Ordinarily, when the Superior Court enters judgment on one basis, but fails to consider alternate arguments that were raised by the parties, this Court will decline to address those alternate issues in the first instance, and instead direct the Superior Court to do so on remand. *Browne v. Gore*, 57 V.I. 445, 453 n.5 (V.I. 2012); *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 720 n.16 (V.I. 2011). However, given that nearly 20 years have passed since Rennie filed his complaint in 1997, and more than 13 years have passed since HOVIC filed its original motion to dismiss in 2001, this Court, given the extreme delays in this case, will resolve these issues — all of which involve pure questions of law that were the subject of supplemental briefing — as part of the present appeal. *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 314 (V.I. 2014) ("[w]hen . . . this Court applies a plenary standard of review to the underlying Superior Court decision, it can . . . analyze [a] legal issue for the first time on appeal" in the interests of judicial economy). Therefore, we address each of HOVIC's claims in turn.

### 1. Meaning of "Discharge" in Section 76 of the Virgin Islands Wrongful Discharge Act

In its appellate brief, HOVIC argues that Rennie's complaint failed to state a claim under section 76 of the Wrongful Discharge Act. Section 76 provides, in pertinent part that

> [u]nless modified by union contract, an employer may dismiss any employee:
>
> (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
>
> (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

24 V.I.C. § 76(a). "Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged," provided that the employee was not terminated "as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship." 24 V.I.C. § 76(c).

For more than a decade, local and federal courts in the Virgin Islands determined whether a plaintiff properly pleaded a cause of action under section 76 by applying the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for claims arising under the federal Civil Rights Act. *See Rajbahadoorsingh v. Chase Manhattan Bank, NA*, 168 F. Supp. 2d 496, 504-05 (D.V.I. 2001). But recently, the United States Court of Appeals for the Third Circuit strongly criticized this approach, finding that there is no basis in the plain language of section 76 or its legislative history for incorporating this federal test into Virgin Islands jurisprudence. *Maynard v. Rivera*, 675 F.3d 225, 230, 56 V.I. 885 (3d. Cir. 2012). The Third Circuit reasoned that section 76 "amounts to a 'statutory abrogation of the common law rule of at-will employment applicable in the Virgin Islands,' " *id.* at 228 (quoting *Kretzer v. Hess Oil V.I. Corp.*, 218 F. Supp. 2d 724, 728 (D.V.I. 2002), and that it codified "a presumption . . . 'that an employee has been wrongfully discharged if discharged for any reason

other than those listed in Section 76(a).' " *Id.* (quoting *Gonzalez v. AMR*, 549 F.3d 219, 222, 50 V.I. 1150 (3d Cir. 2008)). Because Congress had passed the federal Civil Rights Act to eliminate discrimination in employment while the Legislature enacted section 76 to abrogate the employment at-will doctrine, the Third Circuit observed that "the *Rajbahadoorsingh* court's attempted parallel falls short." *Id.* at 230. While it declined to overturn *Rajbahadoorsingh* and its progeny because "[t]he parties d[id] not dispute that [the plaintiff] ha[d] established her *prima facie* case of wrongful discharge" under the *McDonnell Douglas* framework, *id.* at 231, it felt compelled to note its reservations, and to emphasize that "[w]ith the establishment of the Supreme Court of the Virgin Islands, the final say on territorial law now rests with the Virgin Islands' highest court." *Id.* at 230 (citing *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 94, 53 V.I. 936 (3d Cir. 2010)).

▇▇ Recently, the Superior Court and the District Court, taking guidance from the Third Circuit's *Maynard* decision, have both independently determined that *Rajbahadoorsingh* was wrongly decided, and that *McDonnell Douglas* and other case law interpreting the federal Civil Rights Act are irrelevant in determining whether a plaintiff properly pleaded a claim under the Virgin Islands Wrongful Discharge Act. *See Celestine v. St. Croix Fin. Ctr.*, Super. Ct. Civ. No. 658/2006 (STX), 2014 V.I. LEXIS 68, at *5 n.1 (V.I. Super. Ct. Aug. 27, 2014) (unpublished); *Gumbs-Heyliger v. CMW & Assocs. Corp.*, Civ. No. 2012-00078, 2014 U.S. Dist. LEXIS 160451, *9-10 (D.V.I. Nov. 13, 2014) (unpublished). In its decision, the Superior Court found that there was no reason not to "simply apply the plain language of the statute" to determine whether a plaintiff properly pleaded a claim for wrongful discharge. *Celestine*, 2014 V.I. LEXIS 68, at *5 n.1. Likewise, the District Court concluded that the plain language of section 76, combined with its structure, indicated that a plaintiff only bore the burden of pleading — and ultimately proving — that he was discharged, while the permissible grounds for discharge set forth in sections 76(a)(1)-(9) and 76(c) were affirmative defenses that the defendant would be required to plead and prove. *Gumbs-Heyliger*, 2014 U.S. Dist. LEXIS 160451 at *12.

▇▇ We agree with the Third Circuit that the Legislature codified the Virgin Islands Wrongful Discharge Act for a different purpose from that motivating Congress when it enacted the federal Civil Rights Act, and that *McDonnell Douglas* and other federal precedents are irrelevant with

respect to interpreting section 76. We also agree with the Superior Court and the District Court that the Legislature intended that section 76 be construed to simply mean what it says. As we have previously emphasized, "[u]nder Virgin Islands law, [a party] is not required to prove a negative." *Bryan v. Fawkes (Bryan II)*, 61 V.I. 416, 473 (V.I. 2014). This is because the Legislature has decreed that "[i]n civil cases *the affirmative of the issue shall be proved.*" 5 V.I.C. § 740(5) (emphasis added). Thus, we conclude that, to state a claim under section 76, Rennie only needed to plead that HOVIC was his employer and that HOVIC wrongfully discharged him, and was not required to anticipate in his complaint any affirmative defenses HOVIC might raise in its answer, such as the permissible grounds for discharge set forth in section 76(a)(1)-(9).[10]

Nevertheless, the parties disagree as to whether Rennie has properly pleaded that he was discharged by HOVIC. In his complaint, as well as his opposition to HOVIC's motion to dismiss, Rennie maintained that HOVIC "discharged" him by demoting him from his former position as "Shift Foreman" to the inferior "A Operator" position. Rennie, therefore, believes that an employee may be "discharged" in violation of section 76 if he is demoted from a specific position even if his employment is not completely terminated. HOVIC, however, maintains that liability under section 76 can only be triggered if there is a complete termination of employer-employee relationship.

---

[10] Although not raised by HOVIC on appeal, we note that Rennie's complaint does not specifically allege that HOVIC "has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period preceding [his] discharge," as is required for HOVIC to fall within the definition of "employer" under the Virgin Islands Wrongful Discharge Act. 24 V.I.C. § 62. The United States Supreme Court has described such numerosity requirements under Title VII as an "element of a plaintiff's claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). It is unclear whether that requires a plaintiff to affirmatively plead and prove the numerosity requirement in all circumstances. *See id.* (affirming an award under Title VII even after the plaintiff failed to prove numerosity where the defendant did not raise this issue until after trial). Regardless, because we have already rejected the use of the Title VII pleading standards under the Virgin Islands Wrongful Discharge Act, we similarly reject the notion that numerosity must be affirmatively pleaded in a plaintiff's complaint under the Virgin Islands Wrongful Discharge Act. There can be no doubt that by simply pleading that he was discharged in violation of that act, Rennie gave HOVIC sufficient notice of the claim he was bringing. *See Joseph v. Bureau of Corr.*, 54 V.I. 644, 650 (V.I. 2011) (the Virgin Islands is a "notice pleading" jurisdiction); *accord Percival v. People*, 62 V.I. 477, 485 n.1 (V.I. 2015).

Since the Virgin Islands Wrongful Discharge Act was not modeled on the laws of any other jurisdiction — and, in fact, has not been adopted by any other state or territory, *Bell v. Chase Manhattan Bank*, 40 F. Supp. 2d 307, 311-12, 40 V.I. 377 (D.V.I. 1999) — this Court must turn to the traditional rules of statutory construction to determine the meaning of the phrase "discharged." The Legislature has instructed that "[w]ords and phrases" in the Virgin Islands Code "shall be construed according to the common and approved usage of the English language" unless the word has "acquired a peculiar and appropriate meaning in the law." 1 V.I.C. § 42.

The United States Supreme Court, in interpreting an employment statute that also used the word "discharge," noted that, in common parlance, "[d]ischarge normally means termination of the employment relationship *or loss of a position.*" *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 286 & n.10, 66 S. Ct. 1105, 90 L. Ed. 1230 (1946) (emphasis added) (citing WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed.)). Other courts, in a wide variety of contexts, have also consistently held that a demotion is equivalent to a discharge. *See Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1218 n.8 (1st Cir. 1989) ("We have treated outright demotions, which involve reductions in pay and official rank, as equivalent to discharges.") (citing *Gierbolini-Colon v. Aponte-Roque*, 848 F.2d 331, 333 & n.2 (1st Cir. 1988)); *Foor v. Torrington Co.*, 170 F.2d 487, 490 (7th Cir. 1948) ("It is crystal clear that a demotion is the equivalent of a discharge.") (citing *Fishgold*, 328 U.S. at 286); *Retirement Bd. of Attleboro v. School Committee of Attleboro*, 417 Mass. 24, 627 N.E.2d 899, 900 (1994) (rejecting argument that phrase "removal or discharge" in statute does not encompass demotions).

Such a construction is consistent with the evil that the Legislature intended to address when it adopted the Virgin Islands Wrongful Discharge Act. The limited legislative history available reveals that the primary sponsor of the bill, Senator Adelbert Bryan, was concerned that workers — particularly those in the tourism industry — might be discharged for not having the right hairstyle, or for returning to the place of business to socialize with customers after work. *Bell*, 40 F. Supp. 2d at 310. Another supporter, Senator Virdin Brown, also indicated that the purpose of the Wrongful Discharge Act was to provide local employees with legal recourse in the event they were discharged "on the whim of an employer." *Id.*

■ ■ Narrowly construing the word "discharged" as requiring a complete termination of any employment relationship with the employer, as opposed to termination from a particular position, would undercut the Legislature's clear intent to abolish the traditional concept of employment-at-will in the Virgin Islands. *Id.* at 312. Unquestionably, if a bartender is fired for having the wrong hairstyle, the employer would be subject to liability under section 76. However, under HOVIC's proposed interpretation of section 76, the employer could escape any liability by reassigning the bartender to a significantly less desirable position — for instance, as a bathroom attendant — at a greatly reduced salary. While some employees might reject that arrangement and bring a section 76 action under a constructive discharge theory,[11] the individuals that are most in need of the protections of the Wrongful Discharge Act — those who have come to rely on their job and cannot easily seek alternate employment — may continue to work in the lower position, despite having been removed from their prior position for an impermissible reason. *See Clark v. Eagle Sys., Inc.*, 279 Mont. 279, 927 P.2d 995, 1000 (1996) (Trieweiler, J., dissenting) ("The mere fact that he took the inferior position simply means that he did everything he could to mitigate his damages."). Given the existence of case law interpreting "discharge" as encompassing both discharge from employment and demotion from a particular position, as well as the fact that the Legislature clearly intended to abrogate employment-at-will and permit discharge only for a specific set of enumerated reasons, it is clear that the Legislature intended a broad construction of the word "discharged." Accordingly, we hold that in alleging a wrongful demotion, Rennie pleaded a valid claim for wrongful discharge under section 76.[12]

---

[11] "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is equated to a formal discharge for remedial purposes." *Fraser v. Kmart Corp.*, Civ. No. 2005-0129, 2009 U.S. Dist. LEXIS 35253, *22 (D.V.I. 2009) (unpublished). Thus, the constructive discharge doctrine prevents employers from "avoid[ing] the intended consequences of [the Wrongful Discharge Act] simply by creating an atmosphere so intolerable that a reasonable person would feel compelled to resign." *Id.* at *20 (citing *Harley v. Caneel Bay, Inc.*, 193 F. Supp. 2d 833, 838 (D.V.I. 2002)).

[12] In reaching this decision, we again emphasize that to state a claim under section 76, a plaintiff is only required to plead that the defendant was his employer and wrongfully discharged him. As such, Rennie is not required to anticipate in his complaint any of the affir-

## 2. Private Cause of Action Under Section 451 of Title 24 of the Virgin Islands Code

HOVIC also argues that Rennie cannot seek relief under 24 V.I.C. § 451 because that statute, as it existed when Rennie filed his complaint in 1997, did not authorize a private cause of action. At the time Rennie filed his complaint, section 451 provided, in pertinent part, as follows:

> Notwithstanding the provisions of any other law, it shall be unlawful employment practice or unlawful discrimination:
>
> > (1) For an employer to refuse to hire or employ or to bar or discharge from employment, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;
> >
> > (2) For an employer to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment because of race, sex, age, religion, color or ancestry . . . .

Former 24 V.I.C. § 451(a)(1)-(2) (1997) (prior to amendment by Act No. 7323, § 2(a) (V.I. Reg. Sess. 2011)). The United States District Court of the Virgin Islands ruled in several cases that section 451 did not establish a private cause of action, and that employees aggrieved by these discriminatory practices lacked standing to sue their employer. *See, e.g., Miller v. V.I. Hous. Auth.*, 46 V.I. 623, 630-31 (D.V.I. 2005); *Frorup-Alie v. V.I. Hous. Fin. Auth.*, Civ. No. 2000-0086, 2003 U.S. Dist. LEXIS 25395, at *6 (D.V.I. Oct. 24, 2003) (unpublished); *Williams v. Kmart Corp.*, Civ. No. 1999-0102, 2001 U.S. Dist. LEXIS 9183 (D.V.I. Mar. 5, 2001) (unpublished); *Hazell v. Executive Airlines, Inc.*, 886 F. Supp. 526, 527, 32 V.I. 312 (D.V.I. 1995). Ultimately, in 2011, the Legislature overruled these District Court decisions by amending section 451 to explicitly provide that "[i]n addition to other remedies, any person who has been discriminated against as defined in this section may bring an action for compensatory and punitive damages in any court of competent jurisdiction." 24 V.I.C. § 451(a) (Supp. 2014). HOVIC maintains that this amendment cannot apply retroactively and that this Court

---

mative defenses HOVIC might assert to defend its decision to demote him, such as the permissible grounds set forth in section 76(a)(1)-(9).

— like the District Court — should hold that section 451, as it existed at the time of the events described in Rennie's complaint, did not authorize a private cause of action.[13]

 We hold that the pre-2011 District Court cases were wrongly decided, and that section 451 always authorized a private cause of action. While several of these District Court opinions interpreted section 451 in a cursory manner, the *Miller* decision represents perhaps the most comprehensive attempt at addressing this issue. In *Miller,* the District Court recognized that under the "common law tradition . . . the denial of a remedy [is] the exception rather than the rule," and that "[i]f a statute was enacted for the benefit of a special class, a remedy was recognized for members of that class." 46 V.I. at 627. Under this approach, silence or ambiguity could not be a reason to deny standing to enforce a statute by an individual who the statute was clearly enacted to protect. *Id.* (citing *Jacobs v. Pabst Brewing Co.*, 549 F. Supp. 1050, 1055 (D. Del. 1982) (collecting cases)).

The *Miller* court openly acknowledged that, were it to apply the common law tradition, "the Court would infer that when the Legislature adopted 24 V.I.C. § 451, it intended to allow a plaintiff to bring a private cause of action against a violator of that statute." *Id.* at 628. Nevertheless, the District Court chose to disregard all of those common law precedents, and adopt a "modified version" of a test adopted by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), a case where that Court was asked to determine whether a federal criminal statute authorized a private cause of action for damages. *Miller*, 46 V.I. at 629. In *Cort*, the United States Supreme Court announced a four-prong test that it would apply to determine if Congress authorized a private remedy in a statute that does not expressly provide one:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" — that is, does the statute create a federal right in

---

[13] In its supplemental brief, HOVIC notes that the Legislature, in enacting its 2011 amendment to section 451, may have eliminated the language prohibiting unlawful employment practices or unlawful discrimination. *See* 2011 V.I. Sess. Laws 289 (Act No. 7323, § 2(a)) ("Title 24, chapter 17, section 451 of the Virgin Islands Code is amended . . . [b]y adding a *new* subsection (a) to read as follows . . . ." (emphasis added)). Because we apply the version of the statute that was in effect when Rennie filed his complaint in 1997, we express no opinion on the effect the 2011 amendment has on section 451.

favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (internal citations omitted). Without providing any explanation as to why this test should apply to the exclusion of the common law approach, the District Court announced that it would interpret section 451 in light of the first three *Cort* factors — since "[t]he fourth factor has no application in construing a territorial statute" — and ultimately concluded that they did not support an implied private right of action. *Miller,* 46 V.I. at 629-31.

■■■ Both this Court, as well as the Third Circuit, have cautioned against the wholesale, uncritical importation of federal rules and precedents into Virgin Islands jurisprudence. *See, e.g., Bryan I,* 61 V.I. at 225; *Sweeney v. Ombres,* 60 V.I. 438, 442 (V.I. 2014); *Browne v. People,* 50 V.I. 241, 254-55 (V.I. 2008); *Gov't of the V.I. v. Durant,* 49 V.I. 366, 374 (V.I. 2008); *Maynard,* 675 F.3d at 230. In fact, this Court has previously held that "[a]lthough the tenets of statutory construction applied to federal statutes by the U.S. Supreme Court may be highly persuasive, they do not bind this Court in its interpretation of statutes passed by the Virgin Islands Legislature." *Billu v. People,* 57 V.I. 455, 471 (V.I. 2012). The reason for this caveat should be fairly obvious — unlike state legislatures, Congress lacks a "plenary police power that would authorize enactment of every type of legislation." *United States v. Lopez,* 514 U.S. 549, 566, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995) (citing U.S. CONST. art. I, § 8). And while it is true that Congress does possess such plenary police power with regard to the Virgin Islands under Article IV of the United States Constitution, *see Bryan II,* 61 V.I. at 438 n.5, instead of exercising that authority, Congress has chosen to vest it in the Virgin Islands Legislature. *Murrell v. People,* 54 V.I. 338, 360 (V.I. 2010) (citing 48 U.S.C. § 1574); *Gannet Corp. v. Stevens,* 282 F. Supp. 437, 441, 6 V.I. 309 (D.V.I. 1968) (the grant of legislative authority in 48 U.S.C. § 1574 encompasses the "ordinary area of sovereign legislative power"). Given this difference between the legislative responsibilities of Congress and the Virgin Islands Legislature under the Revised Organic Act, the rules of

statutory construction that the United States Supreme Court has adopted to aid in its interpretation of laws enacted by Congress will not always be of assistance in interpreting a statute enacted by our Legislature. *Billu*, 57 V.I. at 471.

■ The four-prong *Cort* test is perhaps the textbook example of a rule of statutory construction adopted by the United States Supreme Court to interpret acts of Congress that should not be used to interpret a Virgin Islands statute. The fourth *Cort* factor requires that a court consider if "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78. Clearly, this factor is relevant to interpretation of a federal statute because Congress, as a body that lacks plenary police power, is presumed not to intrude on the traditional powers of state governments. *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991). Notably, *Cort* itself emphasized the historical regulation of corporations by state governments, combined with the availability of existing causes of action under state law, as a strong reason for holding that Congress could not have intended to create a federal civil cause of action through a federal criminal statute. *Id.* at 84-85. Although the District Court — recognizing the absurdity of applying that fourth factor to a Virgin Islands statute — only adopted the first three *Cort* factors, the very existence of the fourth *Cort* factor should have alerted the District Court that it is not appropriate to apply this particular rule of statutory construction to interpret acts of the Virgin Islands Legislature.

■ In contrast with the reasoning of *Cort*, this Court has repeatedly held that statutes which are silent as to who has standing to bring suit should be broadly interpreted to confer standing. *Hansen v. O'Reilly*, 62 V.I. 494, 525 n.35 (V.I. 2015); *Mapp v. Fawkes*, 61 V.I. 521, 534 n.11 (V.I. 2014); *Bryan I*, 61 V.I. at 222 n.12; *V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 212 (V.I. 2013). For similar reasons, this Court applies the common law approach discussed in *Miller*, which is the very same approach the District Court held would unquestionably require a finding that section 451 establishes a private cause of action. 46 V.I. at 628. Given that the *Cort* test is inapposite, this Court, consistent with its prior precedents, concludes that Rennie could assert a cause of action under section 451, even prior to the 2011 amendments.

### 3. *Virgin Islands Civil Rights Act*

 Finally, HOVIC contends that Rennie has failed to plead a *prima facie* case for a violation of the Virgin Islands Civil Rights Act. The pertinent part of the Virgin Islands Civil Rights Act provides that

> (a) All natural persons within the jurisdiction of the United States Virgin Islands, without regard to race, creed, color, or national origin, and subject only to the conditions and limitations established by law and applicable in like manner to all persons, are entitled to —
>
>> (1) equal treatment with respect to employment, pay and working conditions in any and all businesses and industry, and with respect to union membership.
>
> . . . .
>
> (b) No person, being the owner, proprietor, superintendent, manager, agent, or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, deny employment in or at such business to any applicant therefor, or engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin, subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. § 3. The Virgin Islands Civil Rights Act further expressly authorizes a private cause of action, with penalties for each violation. 10 V.I.C. § 7; *see Figueroa*, 188 F.3d at 178.

HOVIC's claim that Rennie has failed to plead a cause of action under the Civil Rights Act lacks merit. HOVIC, relying on *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508 (3d Cir. 1996), maintains that Rennie was required to plead in his complaint that other unprotected workers were retained as supervisors when he was demoted. However, HOVIC ignores that *Marzano* interpreted the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(a), which the New Jersey Supreme Court held was modeled after the federal Civil Rights Act and needed to be interpreted under the same legal standard. *Marzano*, 91 F.3d at 502. Significantly, the Virgin Islands Civil Rights Act, in addition to being significantly broader in scope than the federal Civil Rights Act, is one of

the original provisions of the Virgin Islands Code that went into effect on September 1, 1957, and thus predates the adoption of the federal Civil Rights Act — originally enacted by Congress in 1964 — by nearly a decade. Thus, it is not clear why *Marzano*, or any other case interpreting the federal Civil Rights Act, is of any assistance in interpreting the Virgin Islands Civil Rights Act.[14]

Rather than grafting the *McDonnell Douglas* pleading framework onto the Virgin Islands Civil Rights Act — an approach that we have already rejected earlier in this opinion with respect to the Virgin Islands Wrongful Discharge Act — we believe the better methodology is to simply look to the statutory language itself. The Virgin Islands Civil Rights Act provides that all individuals, regardless of race or national origin, are entitled to "equal treatment with respect to employment, pay and working conditions in any and all businesses and industry," and correspondingly prohibits employers from "directly, indirectly or by subterfuge, deny[ing] employment in or at such business to any applicant therefor, or engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work." 10 V.I.C. § 3.

In his complaint, Rennie alleged (1) that black Virgin Islands employees, such as himself, were required to take tests to maintain employment in the "Shift Foreman" position, whereas such tests were not required of employees hired from the United States mainland; (2) that employees from the United States mainland were paid higher wages or provided more benefits despite having the same or similar experience; (3) that Virgin Islanders were repeatedly passed over for promotion to the "Shift Supervisor" position in favor of non-local employees with less seniority and less experience; (4) that Rennie received less favorable evaluations due to his race and national origin, was denied pay raises and promotions due to his race and national origin; and (5) that he was discharged due to that discrimination. (J.A. 170-71.) These allegations, if ultimately substantiated with evidence and credited by a jury, would clearly establish HOVIC's liability under section 3 of title 10 of the Virgin

---

[14] In its appellate brief, HOVIC also cites to *Bachelor v. Pitt Des-Moines, Inc.*, 45 V.I. 178, 181-82 (V.I. Super. Ct. 2003), for this same proposition. However, the *Bachelor* case, in addition to being non-binding on this Court, made this statement in the context of the Virgin Islands Wrongful Discharge Act, not the Virgin Islands Civil Rights Act, and in any case based the decision not on any independent analysis, but by reflexively citing to and applying *Marzano* as what it perceived to be a binding precedent.

Islands Code.[15] Accordingly, Rennie pleaded a valid claim for violation of the Virgin Islands Civil Rights Act.

## III. CONCLUSION

The Superior Court erred when it dismissed Rennie's complaint on statute of limitations grounds when HOVIC had waived its statute of limitations defense by failing to plead it in its answer. We also conclude that Rennie pleaded causes of action under the Virgin Islands Wrongful Discharge Act and the Virgin Islands Civil Rights Act, and that the Legislature authorized a private cause of action for violations of section 451 of title 24 of the Virgin Islands Code. As such, we reverse the Superior Court's April 5, 2014 opinion and order.

---

[15] HOVIC further argues that Rennie failed to state a claim under the Virgin Islands Civil Rights Act because he did not cite it in his complaint. But HOVIC raises this issue for the first time on appeal, and so it is waived. V.I.S.CT.R. 4(h), 22(m); *see Cacciamani & Rover Corp. v. Banco Popular de Puerto Rico*, 61 V.I. 247, 251 n.2 (V.I. 2014) (a complaint's failure to state a claim cannot be raised for the first time on appeal). And even though HOVIC is correct that Rennie didn't cite a specific provision of Virgin Islands law for this claim in his complaint, this Court recently explained that a complaint is not rendered deficient simply because the plaintiff fails to cite the specific statute governing the cause of action. *Mapp*, 61 V.I. at 534 n.11 (citing *Johnson v. City of Shelby*, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014)).