**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1379
_____

JULIO BECCERRIL; EVARISTO RODRIGUEZ,
                                    Appellants

v.

SPARTAN CONCERTE PRODUCTS, LLC

_____

Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-12-cv-00029)
District Judge: Hon. Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 12, 2019
_____

Before: SMITH, <u>Chief Judge</u>, McKEE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: January 27, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Plaintiffs Julio Beccerril and Evaristo Rodriguez sued their former employer, Spartan Concrete Products LLC ("Spartan"), for failing to pay them overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Virgin Islands Fair Labor Standards Act ("VIFLSA"), V.I. Code Ann. tit. 24, §§ 1-23, and for wrongful termination in violation of the Virgin Islands Wrongful Discharge Act ("WDA"), V.I. Code Ann. tit. 24, § 76. Because the District Court did not clearly err in calculating Plaintiffs' damages on their FLSA and VIFLSA claims and in entering judgment for Spartan on Plaintiffs' WDA claim, we will affirm.

I

A

Spartan produced, sold, and delivered ready mix concrete in St. Croix and St. Thomas using dump truck drivers to transport materials such as sand and gravel and concrete truck drivers to transport concrete. Spartan hired Beccerril and Rodriguez to work as dump truck drivers and paid them $22.50 for each load of materials they delivered, with each delivery taking about one-and-a-half hours to complete. When they were not delivering loads, Plaintiffs performed general maintenance in Spartan's concrete yard for $14 per hour.

Spartan paid Plaintiffs each week by business check but did not keep precise records of the hours they worked. Instead, tickets listing the loads they carried were used to track their deliveries. Spartan's trucking invoices also referenced tickets for deliveries completed and showed hours worked each day by each Plaintiff for an eleven-week

2

period for which Spartan had records for daily work. Maintenance hours worked were tracked in logbooks. From the invoices, tickets, logbooks, and Plaintiffs' paycheck stubs,[1] Spartan created a spreadsheet reflecting Plaintiffs' work and pay by the week.[2] Although not reflected in the records, Plaintiffs testified that they worked eight regular hours and four overtime hours, six days per week. Beccerril specifically testified that he worked twenty-four to twenty-five hours of overtime each week for which he did not receive overtime pay.

In June 2011, Spartan terminated Plaintiffs. In their termination letters, Spartan informed Plaintiffs that it was "reduc[ing] its work force and subcontractor services" "[d]ue to economic difficulties and high overhead costs."[3] J.A. 421-22. Witnesses testified that Spartan lacked work requiring dump trucks, struggled to pay its bills, and had net income losses in both 2010 and 2011 of over $1.6 million. Spartan closed its St. Thomas branch in December 2013 and its St. Croix branch in November 2014.

---

[1] Plaintiffs' 1099 tax forms for 2010 and 2011 corroborate the pay amounts listed on the spreadsheets.

[2] Beccerril was employed from January 22, 2010 to June 3, 2011 (71 weeks) and Rodriguez was employed from November 2010 to June 3, 2011 (28 weeks). In their reply, however, Plaintiffs' proposed calculation of damages for Beccerril assumes a start date of January 2009. Plaintiffs did not raise this date in their opening brief, so this argument is waived. See Garza v. Citigroup Inc., 881 F.3d 277, 284-85 (3d Cir. 2018) ("[W]here an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this court." (quoting Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993))). In any event, the evidentiary basis for this date is unclear.

[3] Beccerril also testified that around this time, Spartan dispatcher, Halvor Berg, told him that Spartan general manager, Rodger Bressi, had received a complaint that Beccerril was speeding and did not want Beccerril driving anymore.

Beccerril testified, however, that Spartan was "[v]ery, very busy," J.A. 90, that he worked until 10:00 p.m. the night before his termination and, even after his termination, he saw Spartan dump trucks being driven. Rodriguez echoed that Spartan "always was busy." J.A. 178.

B

Plaintiffs sued Spartan in the District Court of the Virgin Islands for, among other things, unpaid overtime wages in violation of the FLSA and the VIFLSA and wrongful termination in violation of the WDA. After a bench trial, the District Court granted judgment for Plaintiffs on their wage claims and for Spartan on their discharge claim. Rodriguez v. Spartan Concrete Prods., LLC, Civ. No. 12-29, 2019 WL 215580, at *11 (D.V.I. Jan. 16, 2019). The Court held: (1) Plaintiffs were employees, not independent contractors, and were entitled to overtime pay, id. at *4-6; (2) Spartan owed Beccerril $2,005.76 and Rodriguez $1,062.47 under the FLSA for hours worked beyond a forty-hour week, id. at *8; (3) Spartan owed Beccerril $636.83 and Rodriguez $147.89 under the VIFLSA for hours worked beyond an eight-hour workday, id. at *9; and (4) Spartan was not liable for wrongful discharge under the WDA because it proved that Plaintiffs'

4

termination was due to its economic hardship, id. at *10. Plaintiffs appeal the Court's damages calculation and conclusion that they were not wrongly terminated.

II[4]

A

We first address Plaintiffs' challenge to the FLSA award. For FLSA claims, the employee ordinarily bears "the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262, as recognized by IBP, Inc. v. Alvarez, 546 U.S. 21, 25-26 (2005). This burden is harder to meet where an employer has failed to keep adequate records of the "wages, hours, and other conditions and practices" of its employees under 29 U.S.C. § 211(c). Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296-97 (3d Cir. 1991). When the employer's records are deficient, the employee may "submit sufficient evidence from

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and 48 U.S.C. § 1612. We have jurisdiction under 28 U.S.C. § 1291.

"When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law and review the District Court's findings of fact for clear error." CG, 734 F.3d at 234 (citation omitted). "The factual findings underlying the district court's computation and award of back wages are subject to the clearly erroneous standard." Martin v. Selker Bros., Inc., 949 F.2d 1286, 1292 (3d Cir. 1991). A finding of fact is clearly erroneous where "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal quotation marks and citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574 (citations omitted).

5

which violations of the Act and the amount of an award may be reasonably inferred." Id. at 1297.

While compensation calculations featuring "imprecision[s]" arising from recordkeeping failures do not defeat recovery, id., calculations based on "mere speculation" do not provide a basis for relief, Rosano v. Township of Teaneck, 754 F.3d 177, 189 (3d Cir. 2014) (citation omitted). If the employee produces evidence from which a fact finder may reasonably infer the amounts owed to the employee, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Martin, 949 F.2d at 1297 (quoting Mt. Clemens, 328 U.S. at 687-88).

Plaintiffs do not challenge the method used to calculate damages. Rather, they contend that the District Court erred in relying on Spartan's spreadsheet rather than their testimony that they worked twenty-four to twenty-five overtime hours per week. The Court did not err because Spartan's spreadsheet "negat[ed] the reasonableness of the inference to be drawn from" Plaintiffs' testimony. Id. (quoting Mt. Clemens, 328 U.S. at 687-88). While the spreadsheet does not specify the exact number of hours worked each week,[5] other evidence, including Plaintiffs' testimony, provided a basis for the Court to conclude that each delivery took one-and-a-half hours to complete, and documents showed the number of loads each Plaintiff carried. From there, the Court could estimate

---

[5] Instead, it summarized the number of loads and hourly maintenance work done.

that Plaintiffs worked over forty hours some weeks, but not every week.[6]  Relatedly, the spreadsheet showed that Plaintiffs' work varied, and testimony corroborated that they did not work more than forty hours every week.  Thus, although Plaintiffs testified that they each worked twenty-four to twenty-five hours over forty hours each week, the Court did not err in concluding that Spartan's evidence negated any reasonable inference that they regularly worked that amount of overtime.[7]

The District Court also did not clearly err in its calculation of overtime damages under the VIFLSA.  The VIFLSA is analogous to the FLSA, Amalgamated Workers Union of V.I. v. Hess Oil V.I. Corp., 478 F.2d 540, 545 (3d Cir. 1973), but requires overtime pay in more circumstances than the FLSA.  The VIFLSA requires employers to pay their employees an overtime rate of one and one-half times the regular rate for all work performed over forty hours in a week and work performed "in excess of 8 hours in

_____

[6] Although Plaintiffs were paid by the load (rather than by the hour) for some work, the parties agree that the District Court properly found that their "regular rate" of pay was $15 per hour.  See 29 C.F.R. § 778.109.  The parties also agree that the appropriate overtime rate is $22.50 per hour (one and one-half times the regular rate).  See 29 U.S.C. § 207(a)(1) (requiring that "for a workweek longer than forty hours" an employee who works "in excess of" forty hours must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed").

[7] Plaintiffs argue that the District Court erred in relying on the spreadsheet because it did not include all tickets and time logged.  Beyond their own testimony, the only support for this contention is Spartan general manager Dion Alibocas's statement that he "reviewed what he found" but "d[id] not know" if it was every ticket.  J.A. 324-25.  That said, neither Plaintiff identified any missing loads.  The Court therefore did not clearly err in basing its damages award on the spreadsheet "even though the result was approximate" because it was a "reasonable inference[] based on the evidence."  Martin, 949 F.2d at 1297.

7

a single workday, whichever excess is calculated to give the employee the greatest compensation." V.I. Code Ann. tit. 24, § 20(a).

Because Spartan's spreadsheet only summarizes work by the week, the District Court also considered Spartan's trucking invoices, which showed loads completed and hours Plaintiffs worked each day in an eleven-week period. For VIFLSA purposes, the Court calculated the amount of overtime pay to which Plaintiffs were entitled for each hour worked over eight hours for the eleven weeks for which Spartan had records of Plaintiffs' daily work, not including weeks Plaintiffs worked over forty hours (since they were already receiving overtime pay for those hours under the FLSA). The Court then divided this amount by eleven weeks to come to an average amount Spartan owed Plaintiffs per week for each of the eleven weeks. It then multiplied this amount by the number of weeks Plaintiffs worked for Spartan.

The District Court did not clearly err in awarding these amounts to Plaintiffs "even though the result was approximate" since its calculation reflected a "reasonable inference[] based on the evidence." Martin, 949 F.2d at 1297. Because Plaintiffs' damages estimation was limited to their own testimony, lacked corroboration, and failed to "account for the day-to-day differences in [employee] scheduling," the Court properly declined to adopt it. Rosano, 754 F.3d at 189 (alteration omitted). Moreover, the spreadsheet and invoices, though perhaps imprecise, rebut Plaintiffs' testimony. As a result, Plaintiffs' calculations constituted "mere speculation, and are insufficient to

support the requisite inference necessary to meet their burden." Id. Thus, the Court did

not clearly err in its calculation of damages.[8]

B

The District Court also properly determined that Spartan did not violate the WDA.

Under the WDA, V.I. Code Ann. tit. 24, § 76, "an employer can lawfully fire an

employee for one of nine enumerated reasons," Maynard v. Rivera, 675 F.3d 225, 228

(3d Cir. 2012), or "as a result of a general cutback in the work force due to economic

hardship," § 76(c). The WDA abrogates the at-will employment doctrine and creates "a

presumption . . . 'that an employee has been wrongfully discharged if discharged for any

---

[8] In their reply brief, Plaintiffs also contend that the District Court should have calculated overtime by multiplying hours worked over forty by 1.5 times the hourly rate ($22.50) and that they are entitled to liquidated damages because Spartan willfully violated the FLSA. Plaintiffs did not raise these arguments in their opening brief, so they are waived. See Garza, 881 F.3d at 284-85.

In any event, the Court properly calculated damages for unpaid overtime by multiplying weekly hours worked over forty by $7.50, the amount owed to Plaintiffs over and above the regular rate they already received for these hours. Plaintiffs point to no evidence showing that they were not paid at all for overtime hours. Instead, Plaintiffs testified that they were paid $22.50 per load and $14 per hour of maintenance work even if they had exceeded forty hours. Since Spartan is liable to Plaintiffs "in the amount of . . . their unpaid overtime compensation," 29 U.S.C. § 216(b), and Plaintiffs were paid a regular rate for hours over forty, "the 'loss suffered' is the 50% premium for their overtime hours," that is, $7.50, Desmond v. PNGI Charles Town Gambling, L.L.C., 630 F.3d 351, 357 (4th Cir. 2011); see also, e.g., Chavez v. City of Albuquerque, 630 F.3d 1300, 1313 (10th Cir. 2011); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 679-80 (7th Cir. 2010). Here, they received the regular rate, and the Court's calculation properly compensates them for the premium owed for their overtime over and above the regular rate they received.

reason other than those listed'" in the statute. Rennie v. Hess Oil V.I. Corp., 62 V.I. 529, 542-43 (2015) (omission in original) (quoting Maynard, 675 F.3d at 228).

To establish a claim under § 76, an employee must prove the "defendant was his employer and wrongfully discharged him." See id. at 546 n.12. The burden of persuasion then shifts to the employer who must prove "by a preponderance of the evidence that the employee was discharged for a permissible reason under the WDA." Gumbs-Heyliger v. CMW & Assocs. Corp., 73 F. Supp. 3d 617, 623 (D.V.I. 2014); Pedro v. Ranger Am. of the V.I., Inc., 63 V.I. 511, 518 (2015) (holding that employer bears the burden to prove one or more of "the permissible grounds for discharge set forth in [V.I. Code Ann. tit. 24, § 76(a)-(c) as] affirmative defenses" (quoting Rennie, 62 V.I. at 543)).

One permissible reason for termination is "economic hardship." § 76(c). To show economic hardship, "an employer must show some meaningful evidence of its financial condition" and "provide evidence linking economic hardship to Plaintiffs' termination." Bellot v. Cardow, Inc., No. ST-2012-CV-0000297, 2017 WL 1738265, at *4 (V.I. Super. Ct. May 1, 2017) (citation omitted). "Mere assertions that business was slow, without more, do not constitute economic hardship." Id. (citation omitted).

Spartan produced sufficient evidence to establish that Plaintiffs were terminated because of its financial hardship. Spartan's Annual Report shows that it operated at a loss in both 2010 and 2011 of over $1.6 million. Witnesses also testified that "[f]inances were very scarce," J.A. 220, the business was slow and had too many employees, and there was "not enough work for . . . everyday use" of the dump trucks, J.A. 230-31. In that regard, Spartan concluded that it could operate without dump truck drivers because

10

concrete drivers could drive both the concrete and dump trucks while "the dump truck drivers could not." J.A. 215-16. For these reasons, management decided to reduce the workforce. Spartan eventually closed both its St. Thomas and St. Croix branches. From this evidence, the District Court appropriately concluded that Spartan terminated Plaintiffs because of financial hardship and thus did not violate the WDA.

IV

For the foregoing reasons, we will affirm the judgment of the District Court.